McMahon *v.* Smith.

JOHN H. MCMAHON AND ANOTHER *vs.* REBECCA SMITH.

A man having been arrested and lodged in jail upon a criminal prosecution against himself and his son, for obtaining goods under false pretenses, his wife agreed with the parties from whom the goods were obtained and who had procured the prosecution, that she would give a note with her husband for the value of the goods and for the costs made, and secure it by a mortgage of her real estate, if they would procure the abandonment of the criminal proceeding and the release of her husband. The note and mortgage were given and the prosecution was withdrawn. Held, on a bill to foreclose the mortgage—
1. That a court of equity would not enforce a contract of suretyship so procured.
2. That the note was void as being upon an illegal consideration.
To render such an agreement void it is not necessary that the crime compounded should be a felony. It is enough if it be a public offence.

BILL for a foreclosure; brought to the Court of Common Pleas of New Haven County, and heard before *Harrison, J.* Facts found and a decree of foreclosure passed. Motion in error by respondent. The case is fully stated in the opinion.

*J. W. Webster* and *J. O'Neil,* for the plaintiff in error.

*G. Stoddard,* for the defendants in error.

LOOMIS, J.   This is a petition to foreclose a mortgage given by Thomas and Eliza Fitzsimmons on her land to secure a note for six hundred and fifteen dollars made by them.

The note was made up of five hundred and ninety dollars, the value of intoxicating liquors sold by the petitioners to Henry A. Fitzsimmons, the son of Thomas and Eliza, to which was added the cost of certain criminal and civil proceedings against the son and father.

On the 12th day of August, 1875, Thomas was arrested on a criminal complaint, procured by the petitioners, charging him and his son Henry A. with obtaining the liquors in question by false pretenses, and was lodged in the Bridgeport lock-up; and the court finds "that after remaining there three or four hours said Thomas and Eliza, his wife, agreed with the petitioners that they would execute and deliver to the petitioners their note for six hundred and fifteen dollars, and secure the same by a mortgage on the real estate of said

Eliza, if the petitioners would procure the abandonment of said criminal proceeding and release said Thomas from confinement; and that thereupon, on said day, and while said Thomas was still in the Bridgeport lock-up, he and his wife executed and delivered to the petitioners the note and mortgage described in the petition; and that there was no other consideration for the note; and that immediately after such execution and delivery said Thomas was released from arrest, and the criminal proceedings were discontinued."

We consider the case as stated controlled by the recent decision of this court in *Town of Sharon* v. *Gager et al.*, 46 Conn., 189, which was a petition to foreclose a mortgage given by one Julia Gager to secure the town against loss on account of the defalcation of her nephew while he was treasurer of the town. The mortgagor, being feeble in body and excitable in temperament, was approached by a selectman, who informed her that her nephew was a defaulter, and had exposed himself to a criminal prosecution punishable in the state prison, and that he would be so prosecuted and punished unless she secured the town immediately. In an agitated state of mind she executed the mortgage for the sole purpose of preventing a criminal prosecution. It was held that a court of equity would refuse to enforce a contract of suretyship entered into under such circumstances, and that it did not alter the case that the selectman believed that the nephew was liable to punishment in the state prison.

The decision was based on the authority of the cases of *Williams* v. *Bayley*, 1 L. R., Eng. & Irish Appeals, House of Lords, 200, and *Davies* v. *London & Provincial Marine Ins. Co.*, L. R. Chancery Div., Vol. 8, 469, from which full citations were made.

We do not see how any distinction in principle can be suggested between the case cited and the one at bar, unless it is said that in the former, by reason of direct threats operating on a sensitive mind, the circumstances showing duress were of a more positive character. But this difference cannot change the result. There were no such flagrant circumstances in either of the English cases referred to. There

were no direct threats of prosecution addressed to the parties giving security; and in one of the cases the friends of the criminal, hearing that he was in danger of arrest on a charge of retaining funds belonging to his principal, voluntarily came and tendered security, and no direct promise even was made for the stay of the prosecution.

In a case like the present, where the intimate relation of husband and wife, or mother and son, exists between the persons accused and the surety, and the husband is actually under arrest, and an express agreement to stifle a pending public prosecution is made and actually consummated, a court of equity is bound to notice, not only the principles of public policy violated, but also the manifest inequality of the parties to the contract, and the unfair advantage taken by one to force an agreement from the other, under the immense pressure which the circumstances must inevitably have produced, and should upon every principle declare that the person so compelled to give security was not a free and voluntary agent, and that the agreement so made must be set aside.

But it is argued in behalf of the petitioners, that, to set aside such a contract, the offense to be compounded must be a felony and not a mere misdemeanor, and that where the parties have a civil remedy they may agree not to prosecute criminally.

It is quite true that a person may settle any claim of private damage as he sees fit, only he may not compromise a public prosecution.

But the right to stifle a prosecution does not turn on the question whether the offense is a felony or a misdemeanor. All the authorities hold that an agreement to compound a felony will not be enforced, and that any security based upon such a consideration is void. But as to misdemeanors a distinction has been made. Some authorities hold that those misdemeanors which are personal in their nature between the parties, such as bastardy and a common assault, unaccompanied with riot or intent to kill, may be compromised. *Maurer* v. *Mitchell*, 9 Watts & Serg., 69; *Robinson* v. *Crenshaw*, 2 Stew. & Porter, 276; *Price* v. *Summers*, 2 Southard, 578; *Holcomb* v.

*Stimpson*, 8 Verm., 141. The last case was a prosecution for bastardy, and the decision was placed on the ground that it was a civil suit.

But where the offense is in whole or in part of a public nature, nearly all the authorities hold that no agreement to stifle a public prosecution for it can be valid. *Fay* v. *Oatley*, 6 Wis., 42; *Commonwealth* v. *Johnson*, 3 Cush., 454; *Hinesborough* v. *Sumner*, 9 Verm., 23; *Bowen* v. *Buck*, 28 id., 308; *Shaw* v. *Reed*, 30 Maine, 105; *Shaw* v. *Spooner*, 9 N. Hamp., 197; *Clark* v. *Ricker*, 14 id., 44; *Kimbrough* v. *Lane*, 11 Bush (Ky.), 556; *Peed* v. *McKee*, 42 Iowa, 649; *Buck* v. *First National Bank*, 27 Mich., 293; *Gardner* v. *Maxey*, 9 B. Monroe, 90; *Kier* v. *Lehman*, 6 Com. Bench, 308.

In the last case cited, which went on error from the Queen's Bench to the Exchequer Chamber, Chief Justice Tindal, in delivering the opinion of the latter tribunal, said:—"If the matter were res integra we should have no doubt in holding that any compromise of any misdemeanor or any public offense was an illegal consideration to support a promise, and it is remarkable what very little authority, consisting rather of dicta than decision, there is to support such considerations."

The offense compromised in the case at bar was clearly of a public nature, involving moral turpitude and affecting the public morals. We therefore hold that the mortgage security taken by the petitioners cannot be enforced.

There was error in the decree complained of and it is reversed.

In this opinion the other judges concurred.