The City National Bank of Dayton, Ohio, vs. Kusworm.

---

The City National Bank of Dayton, Ohio, Respondent,
vs. Kusworm, Appellant.

*May 1 — June 2, 1894.*

*Promissory notes: Duress: Avoidance: Restoration of consideration.*

1. A wife may avoid her note made under duress of threats of criminal prosecution of her husband.

2. Under duress of threats of criminal prosecution of her husband on the charge of forging notes deposited as collateral security for his

own notes to a bank, a wife gave her note to the bank for the amount of her husband's notes. The cashier of the bank thereupon delivered the husband's notes and the collaterals to a friend of the wife, who, at once, in the presence of the cashier, handed them to her, telling her to give them to her husband, and she afterwards did so. In an action by the bank upon the wife's note, it is *held* that she may avoid it on the ground of duress without restoring her husband's notes or the collaterals to the bank. WINSLOW and PINNEY, JJ., dissent.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff is a banking corporation, organized and existing under and by virtue of the laws of the United States, and located at Dayton, Ohio, and brings this action to recover the amount due upon a promissory note, of which the following is a copy, to wit:

"$4,900.　　　　　　　　　　　Chicago, Nov. 2, 1892.

" On demand, for value received, I promise to pay to the order of *City National Bank* the sum of $4,900, at Chicago, with interest at the rate of six per cent. per annum after date, having deposited with said *City National Bank*, as collateral security, my equity of six thousand dollars ($6,000), in a note of Frank M. Stringfield and Sarah Agnes Stringfield for $12,000, dated October 7, 1892, due sixty days after date, payable to the order of themselves and indorsed, together with the security of a trust deed to Abram L. Stone, recorded in book 3082 of records of Cook county, on page 146, which I hereby give the said *City National Bank*, its agents or assignee, authority to sell, or any part thereof, on the maturity of this note or at any time thereafter, or before in the event of said security depreciating in value in the opinion of said *City National Bank*, at public or private sale, at the discretion of said *City National Bank* or its assignee, without advertising the same or demanding payment or giving me any notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all

The City National Bank of Dayton, Ohio, vs. Kusworm.

the interest due thereon, and also to the payment of all expenses attending the sale of the said note and trust deed, including attorney's fees; and in case the proceeds of the sale of the said note and trust deed shall not cover the principal, interest, and expenses, I promise to pay the deficiency forthwith after such sale.     MOLLIE KUSWORM."

The plaintiff prayed judgment accordingly.

The defendant answered the complaint, and in effect alleged: (1) That the note was obtained from her without any valuable consideration therefor, through the fraud of the plaintiff's agent; (2) that it was given to compound a felony; (3) that it was given under duress of threats to prosecute the defendant's husband, then very sick, and who died soon thereafter, for the crime of forgery, and in consideration of the suppression of documentary proof of his guilt.

The court having ruled that under the pleadings the defendant was entitled to the opening and closing of the case, the defendant took the burden of the defense. At the close of the testimony on the part of the defendant, the court was asked to direct a verdict in favor of the plaintiff for the amount of the note and interest.  Before the decision of that motion, the defendant's counsel asked leave to amend the answer by setting up the disposition of the notes surrendered by Gebhart, her ignorance as to what was done with them by her husband, and her willingness to produce and restore the same to the plaintiff so far as she was able so to do; and further alleging that the defendant was a nonresident of the state of Wisconsin,— which amendment was disallowed by the court, except as to the allegation of the defendant's nonresidence.  In determining the motion for an order directing a verdict in favor of the plaintiff, the court said:  "As far as the question as to the power of making this contract on the part of the defendant, *Mrs. Kusworm*, is concerned, I am of the opinion, as I ruled once

before this term, that that power exists, even under the laws of the state of Wisconsin; and I must say that, as to that point, I think that the contract is a binding one upon the defendant. As to the defense interposed,— that the transaction by which this note was given was compounding a felony,— I think the proof clearly shows that no such compounding was then made by the parties; that is, that the elements which constitute the compounding of a felony were absent in the dealings. As to the other point of the defense,— that of duress,— the proof is undisputed but what matters occurred there tending to show that there was some duress or compulsion practiced on the part of the officer of the bank towards this woman. But, to entitle the defendant to recover on that, I think she must, as a matter of law, offer full restitution to the plaintiff, and, not having done so, I must direct a verdict for the plaintiff. The defendant admits the making of the note and the amount. So a verdict for the plaintiff is directed for the principal sum, with interest thereon as specified in the note;" to wit, for the sum of $5,157.25.

From the judgment entered in accordance with the verdict so directed the defendant appeals.

For the appellant there was a brief by *Bashford, O' Connor, Polleys & Aylward* and *Moran, Kraus & Mayer*, and oral argument by *R. M. Bashford.* They argued, among other things, that the note in suit was obtained through duress of the appellant and could not be enforced. *Bryant v. Peck & W. Co.* 154 Mass. 460; *Magoon v. Reber*, 76 Wis. 392; *Harris v. Carmody*, 131 Mass. 51; *Eadie v. Slimmon*, 26 N. Y. 9; *Lefebvre v. Dutruit*, 51 Wis. 334; *Schultz v. Catlin*, 78 id. 611; *Watkins v. Brant*, 46 id. 419, 425; *Bogie v. Bogie*, 37 id. 373; *McCormick H. M. Co. v. Hamilton*, 73 id. 486; *Kuelkamp v. Hidding*, 31 id. 503, 510; *Smith v. Smith*, 60 id. 329; *Cribbs v. Sowle*, 87 Mich. 340; *Morrill v. Nightingale*, 93 Cal. 452; *Morrison v. Faulkner*, 80 Tex.

128. The note in suit was given to prevent a criminal prosecution of a felony, and in consideration of the suppression of the documentary proofs of the crime, and it cannot therefore be enforced by the principal party to the transaction. *Haynes v. Rudd*, 83 N. Y. 251; *Haynes v. Rudd*, 102 id. 373; *Bryant v. Peck & W. Co.* 154 Mass. 460; *Schultz v. Culbertson*, 46 Wis. 313; *Swartzer v. Gillett*, 2 Pin. 238; *Fay v. Oatley*, 6 Wis. 42; *Ætna Ins. Co. v. Harvey*, 11 id. 394; *Melchoir v. McCarty*, 31 id. 252; *Barker v. Barker*, 14 id. 131; *Allard v. Lamirande*, 29 id. 502; *Schultz v. Catlin*, 78 id. 611; *Wight v. Rindskopf*, 43 id. 344; *Eadie v. Slimmon*, 26 N. Y. 9; *Harris v. Carmody*, 131 Mass. 51; *Taylor v. Jaques*, 106 id. 295; *Hamilton v. Lockhart*, 158 Pa. St. 452; *Roll v. Raguet*, 4 Ohio, 400; *Raguet v. Roll*, 7 id. 76. The failure of the appellant to offer restitution does not, under the circumstances, amount to a ratification as a matter of law. *Brown v. Peck*, 2 Wis. 261; *Heckman v. Swartz*, 50 id. 267; *Magoon v. Reber*, 76 id. 392; *Meech v. Lee*, 82 Mich. 274; *Harris v. Carmody*, 131 Mass. 51; *Morse v. Woodworth*, 155 id. 233; *Eadie v. Slimmon*, 26 N. Y. 9; *Barry v. Equitable Life Ass. Soc.* 59 id. 587; *Adams v. Irving Nat. Bank*, 116 id. 606; *Dimmitt v. Robbins*, 74 Tex. 441; *First Nat. Bank v. Bryan*, 62 Iowa, 42; *Baldwin v. Hutchison*, 35 N. E. Rep. 711; *Reynolds v. Copeland*, 71 id. 422.

For the respondent there was a brief by *Charles Noble Gregory*, attorney, and *L. P. Conover* and *S. S. Gregory*, of counsel, and a supplemental brief by *S. S. Gregory*, of counsel; and the cause was argued orally by *Charles Noble Gregory*. They contended, *inter alia*, that failure to return the consideration of a contract bars the defense of fraud, mistake, or *duress*. Cooley, Torts, 506; 2 Parsons, Cont. *679-80, and note A; *Grymes v. Sanders*, 93 U. S. 55; *Schiffer v. Dietz,* 83 N. Y. 300; *Parsons v. McKinley*, 57 N. W. Rep. 1134; *Blake v. Nelson*, 29 La. Ann. 245; Bryant's Justice, § 986 and cases cited; *Grant v. Law*, 29

Wis. 99; *Williams v. Ketchum,* 21 id. 432; *Potter v. Taggart,* 54 id. 395; *Van Trott v. Wiese,* 36 id. 439; *O'Dell v. Burnham,* 61 id. 562; *Reynolds v. Copeman,* 71 Ind. 422; *Baldwin v. Hutchison,* 35 N. E. Rep. 711; *Higham v. Harris,* 108 Ind. 246; *Burnham v. Mitchell,* 34 Wis. 117. The evidence makes no case of duress in law. *Lefebvre v. Dutruit,* 51 Wis. 326; *Metropolitan Life Ins. Co. v. Meeker,* 85 N. Y. 614; *Horton v. Bloedorn,* 37 Neb. 666; *Youngs v. Simm,* 41 Ill. App. 28; *Ford v. Cratty,* 52 Ill. 313; *Heaps v. Dunham,* 95 id. 583; *Knapp v. Hyde,* 60 Barb. 80; *Seymour v. Prescott,* 69 Me. 376; *Compton v. Bunker Hill Bank,* 96 Ill. 301; *Buchanan v. Sahlein,* 9 Mo. App. 552; *Higgins v. Bram,* 78 Me. 473; *Town Council v. Burnett,* 34 Ala. 400; *Thorn v. Pinkham,* 84 Me. 101; *Hilborn v. Bucknam,* 78 id. 482; *Harmon v. Harmon,* 61 id. 227; *Mundy v. Whittemore,* 15 Neb. 647; *Cass Co. Bank v. Brickner,* 34 id. 516; *Weber v. Barrett,* 125 N. Y. 18, 25; *Keckley v. Union Bank,* 79 Va. 458; *Schwartz v. Schwartz,* 29 Ill. App. 516; *Feller v. Green,* 26 Mich. 70; *Taylor v. Cottrell,* 16 Ill. 93. In order to make the defense of compounding a felony available, the probable commission of a felony, or the commencement of a criminal prosecution therefor, must be both pleaded and proved, neither of which was done in this case. *Eberstein v. Willets,* 134 Ill. 106; 1 Wharton, Contracts, sec. 483; *Swope v. Jefferson F. Ins. Co.* 93 Pa. St. 253; *Catlin v. Henton,* 9 Wis. 476; *Steuben Co. Bank v. Mathewson,* 5 Hill, 249; *Schultz v. Catlin,* 78 Wis. 611; *Deere & Co. v. Wolff,* 65 Iowa, 32; *Cheltenham Fire-Brick Co. v. Cook,* 44 Mo. 29; *Wallace v. Hardacre,* 1 Campb. 45.

CASSODAY, J. The execution of the note in suit having been admitted, the plaintiff offered no evidence. On the part of the defendant the evidence, in effect, tends to prove: That on and for some time prior to November 1, 1892, the plaintiff held two promissory notes which it had received

from the defendant's husband, Moses Kusworm, each of which was signed, "M. Kusworm," one being for $4,100 and the other being for $800, making an aggregate indebtedness of $4,900, for money loaned by the plaintiff to him; and that the same were secured by four, five, or six other notes, purporting to be executed by other parties, aggregating in amount seven or eight thousand dollars, as collateral security for the payment of such indebtedness of $4,900. That in the forenoon of November 1, 1892, one Gebhart, agent for the plaintiff, having both of said notes, and also said notes so held as collateral, in his possession, called on the defendant and requested to see her husband. That she told him her husband was very sick. That he said it made no matter, that he must see him, that her husband had borrowed $4,900 from the plaintiff bank, and that he had come there to either get the money or security. That she then obtained permission from the nurse for Gebhart to see Mr. Kusworm. That Gebhart then had an interview with Mr. Kusworm in his room alone, neither she nor the nurse being present; that, finally, Mr. Kusworm called the defendant, and she went into his room. That Mr. Kusworm then told her to put on her coat and hat, and go with Mr. Gebhart to Mr. Stone's house, and secure Gebhart for $4,900 on the mortgage of $12,000 in which the defendant had an equity of $6,000, the other $6,000 of which belonged to Stone, a cousin of Mr. Kusworm. That Gebhart then told her that he had notes with him for $4,900 which her husband had forged; that he would have the Pinkerton detectives take her husband back to Ohio and put him in the hospital until he was able to go to jail, and would then put him in prison. That she protested, on account of her husband's dying condition, and that it would rob her home and her two little children of a father. That she almost fainted. That Gebhart then said, "No matter;" that he had come as agent of the bank, and must fulfill his

duty; that he must either take Mr. Kusworm back to Ohio or she must take up these notes which Mr. Kusworm had forged. That thereupon she and Gebhart took a cab and drove to the office of the plaintiff's attorney, and that the attorney then got into the cab and they all drove to the house of Stone. That Stone was not at home, and so she left a note, requesting him to call at the attorney's office at three o'clock that afternoon. That she then returned to her home and found her husband under the effects of a sleeping powder, but she was cautioned by the nurse not to speak to him for fear that he might die from the effects. That the defendant was in a very delicate condition and weak at the time, having been in the family way for more than three months, but that she managed to get back to the attorney's office at the time appointed. That she found Gebhart and his attorney there, but Stone did not arrive until some minutes afterwards. That Gebhart at once repeated his threats. That when Stone came she introduced Gebhart to him as the man who claimed that her husband had forged notes to the amount of $4,900, and that he had come there to secure the debt Mr. Kusworm was liable for, or take him back to Ohio. That she said that, in order to prevent her husband from being taken back to Ohio and prosecuted, she was willing to turn over her equity in the mortgage mentioned to secure the plaintiff. Stone stepped out and got the mortgage, and returned with it in a few minutes, and thereupon Gebhart and his attorney took the matter under advisement, with an agreement that she and Stone, respectively, would meet them at the same office the next morning at 11 o'clock. That she was compelled to wait in the rain for a long time for the cable cars. That she got home about 8 o'clock in the evening. That she found her children waiting, and her husband scarcely able to open his eyes. That she retired without eating anything, and spent a sleepless night. That, upon returning to the

attorney's office the next morning, she found Gebhart and
Stone there.   That Gebhart refused to accept the security
she had offered, for the reason that Stone's part of the
mortgage was prior to hers.   That Gebhart finally offered
to accept the security if Stone would agree in writing to
prorate with the plaintiff in the mortgage.   That Stone
at first refused.   That Gebhart then repeated his threats,
and the defendant cried and begged of Stone to consent
and thus save her husband, and that he would lose noth-
ing by it; and thereupon Stone consented and signed the
agreement, and the defendant signed the note in suit.   That
Gebhart then handed an envelope to Stone, supposed to
contain the note of $800 and the note of $4,100, each
signed " M. Kusworm," and also the notes to the aggre-
gate amount of seven or eight thousand dollars held by
the plaintiff as collateral thereto, and that Stone thereupon,
and in the presence of Gebhart, handed the envelope with
the notes therein to the defendant with direction to give
them to her husband.   That the defendant took the en-
velope with the notes therein from Stone, and delivered
them to her husband as so directed.   That she did not ex-
amine the notes in the office, and never saw them there-
after, and had no knowledge as to where they were.   That
she had no conversation with Stone, and did not see him
on either of the days mentioned except in the presence of
Gebhart and his attorney.   That Stone did not see Mr.
Kusworm on either of those days, and had not seen him
for several weeks before, and did not see him for several
weeks afterwards.   That the only connection Stone had
with the matter was by reason of his owning a part of the
mortgage as mentioned.   That the defendant did not know
what her husband had done with the notes.   That he died
December 5, 1892, and she was the executrix of his will.
That she had looked over her husband's papers, but had
never found the notes.

The defendant positively swears that she never signed the $800 note nor the $4,100 note, and that she never authorized her husband to sign either of those notes or any notes; but, on her cross-examination, a power of attorney was presented, bearing date September 18, 1891, and which she admits to have been signed by her, authorizing her husband to sign and indorse notes; and it is contended on the part of the plaintiff that Mr. Kusworm signed the $800 note and the $4,100 note, respectively, "M. Kusworm," meaning thereby the defendant, *Mollie Kusworm*, instead of Moses Kusworm. Whatever may be the fact in that regard, yet the evidence in the record is very strongly against any such contentions. There is no evidence that either of those notes was signed by an agent instead of the principal. There is no evidence that Gebhart at any time during any of the several interviews mentioned claimed or pretended that the defendant was the maker of either of those notes, nor that the defendant was, at any time before the making of the note in suit, in any way indebted to the plaintiff, nor that he was there seeking security for any indebtedness of the defendant. Since the verdict was directed for the plaintiff, we must, for the purposes of this appeal, assume that the $800 note and the $4,100 note were each signed " M. Kusworm" by Moses Kusworm, as and for his own signature, and not as and for the signature of his wife.

There is no evidence that Mr. Kusworm actually forged any note, but simply that Gebhart charged him with having forged the notes, as mentioned. It is true that the defendant testified to the effect that Gebhart claimed that he had forged notes in the amount of $4,900; but, from the whole evidence, it is very apparent that the real charge made by Gebhart was to the effect that Mr. Kusworm had forged sundry names to the four, five, or six notes, aggregating seven or eight thousand dollars, which the plaintiff held as collateral security for his indebtedness to the plaint-

The City National Bank of Dayton, Ohio, vs. Kusworm.

iff bank, as mentioned. Upon such evidence the trial court directed a verdict in favor of the plaintiff and against the defendant. The correctness of such ruling is the only question here for review.

Manifestly the defendant cannot avoid paying the note upon the mere ground that it was given to compound a felony. *Catlin v. Henton,* 9 Wis. 476; *Schultz v. Catlin,* 78 Wis. 611. The only defense available, if any, would seem to be that the defendant was prevailed upon to give the note in suit by duress. As a general rule the defense of duress is not available in an action upon a note given to prevent the criminal prosecution of another person. To this rule there are certain well-established exceptions. Among other exceptions, a wife may avoid her contract, otherwise valid, by reason of a threatened criminal prosecution of her husband, and conversely; and so a father may avoid his contract by reason of a threatened criminal prosecution of his son, and conversely. Thus in *Bayley v. Williams,* 4 Giff. 638, affirmed *Williams v. Bayley,* L. R. 1 H. L. 200, a son forged his father's name, as indorser, upon certain promissory notes, and obtained money thereon from his bankers. The fact of the forgeries having been discovered, which the son did not deny, the bankers, without any direct threat of any prosecution, insisted upon a settlement, to which the father was to be a party. The father consented, and agreed in writing to make an equitable mortgage of his property to secure his son's indebtedness; and it was held that the father was not a free and voluntary agent in the making of such agreement, and hence that the same was invalid. The threatening language to the father in that case was: "If the bills are yours, we are all right. If they are not, we have only one course to pursue; we cannot be parties to compounding a felony. It is a serious matter. It is a case of transportation for life." This is exceedingly mild when compared with the language addressed

to *Mrs. Kusworm*, and yet, in the opinion of Lord WESTBURY in that case, it is said: " I regard this as a transaction which must necessarily, for purposes of public utility, be stamped with invalidity, because it is one which undoubtedly, in the first place, is a departure from what ought to be the principles of fair dealing between man and man; and it is also one which, if such transactions existed to any considerable extent, would be found productive of great injury and mischief to the community." The same principle has frequently been applied in avoiding contracts made to prevent the criminal prosecution of a parent or child, a husband or a wife, not only in England, but in this country. *Whitmore v. Farley*, 43 Law T. (N. S.), 192, affirmed 45 Law T. (N. S.), 99; *Seear v. Cohen*, id. 589; *McClatchie v. Haslam*, 63 Law T. (N. S.), 376; *Harris v. Carmody*, 131 Mass. 51; *Foley v. Greene*, 14 R. I. 618; *Coffman v. Lookout Bank*, 5 Lea, 232; *First Nat. Bank v. Bryan*, 62 Iowa, 42; *Southern Exp. Co. v. Duffey*, 48 Ga. 358; *Nat. Bank v. Kirk*, 90 Pa. St. 49; *Jordan v. Elliott*, 12 Wkly. Notes Cas. 56; *Sharon v. Gager*, 46 Conn. 189; *McMahon v. Smith*, 47 Conn. 221; *Central Bank v. Copeland*, 18 Md. 305; *Tapley v. Tapley*, 10 Minn. 448; *Meech v. Lee*, 82 Mich. 274; *Eadie v. Slimmon*, 26 N. Y. 9; *Osborn v. Robbins*, 36 N. Y. 365; *Adams v. Irving Nat. Bank*, 116 N. Y. 606; *Schultz v. Culbertson*, 46 Wis. 313; *S. C.* 49 Wis. 122; *Schultz v. Catlin*, 78 Wis. 611. Upon these adjudications and the evidence before us, it is very clear that the note upon which this action is brought was obtained from defendant by duress, and is for that reason void.

It is contended, however, that duress is a species of fraud, and that the defendant cannot rescind the contract for duress without first restoring to the plaintiff the benefits secured by making the contract. It is undoubtedly true that, if a party invokes the aid of equity to set aside a contract by virtue of which he has received a benefit, he will

be required to restore such benefit as a condition of obtain-
ing such relief. This is upon the familiar principle of es-
toppel *in pais*. Thus, where a party affirms a contract in
part, he is thereby estopped from disaffirming it as to the
residue. "It is a doctrine," said NELSON, J., "when prop-
erly understood and applied, that concludes the truth in
order to prevent fraud and falsehood, and imposes silence
on a party only when in conscience and honesty he should
not be allowed to speak." *Van Rensselaer v. Kearney,*
11 How. 326. "In short and in popular language," said
WILDE, B., "a man is not permitted to charge the conse-
quences of his own fault on others, and complain of that
which he has himself brought about." *Swan v. North
British Australasian Co.* 7 Hurl. & N. 633. "The doctrine
of estoppel *in pais* always presupposes error on one side and
fault or fraud upon the other, and some defect of which it
would be inequitable for the party against whom the doc-
trine is asserted to take advantage." *Morgan v. Railroad
Co.* 96 U. S. 716.

The question recurs whether, upon the principles stated,
the defendant has done anything to estop her from defend-
ing against the note in suit. She is not here invoking the aid
of a court of equity. She is simply resisting the enforce-
ment of an executory contract on the ground that her
signature to the same was procured by duress. As indi-
cated, her defense, as appears from the record, is complete,
unless her conduct has been such as to render it inequi-
table for her to make it. It certainly cannot be said as a
matter of law, upon the record before us, that the defend-
ant received any pecuniary benefit or consideration for
signing the note in suit, or that she was in any way liable
upon or on account of any of the notes surrendered by the
plaintiff at the time she signed that note. If the evidence
before us is true, then she signed that note for the sole pur-
pose of saving her sick husband from arrest, prosecution,

and imprisonment. The envelope, containing the notes of $800, and $4,100, each signed "M. Kusworm," and the collaterals thereto, was not delivered by Gebhart to the defendant, but to Stone. Stone thereupon, in the presence of Gebhart, handed the same to the defendant, with the direction that she deliver the same to her husband. In pursuance of such direction, she did deliver the same to her husband. If the evidence in the record is true, then that is all she ever saw of, or had to do with, that envelope or any of the notes thus contained therein. There is no evidence in the record that the defendant exacted, as a condition of her signing the note in suit, that Gebhart should surrender to her any of the notes so contained in that envelope, or that there was any agreement or understanding to that effect. Stone was a cousin of Mr. Kusworm, and apparently his friend; but there is no evidence that he was his agent, or had any authority to act for him, much less that he acted as the agent of the defendant. What he did in the matter was purely voluntary on his part, and as the result of his owning a mortgage with the defendant, as mentioned. Upon the evidence before us, the legal effect of the transaction seems to be no different than it would have been had Mr. Kusworm been present and Gebhart had delivered the envelope with the notes therein directly to him. Suppose such had been the facts, and Mr. Kusworm had immediately, in the presence of Gebhart, thrown the notes contained in the envelope into the fire and burned them up, would the defendant thereby have been estopped from making the defense of duress? In some of the cases cited the wife signed the contract by the duress of her husband; nevertheless, it was held that her defense of duress was available.

There can be no such thing as estoppel *in pais*, except by reason of something said or done by the person estopped; certainly not by the independent act of another person,

even though such other be her husband. The mere fact that the defendant delivered the package to her husband, as directed in the presence of and acquiesced in by the plaintiff's agent, does not make it inequitable for her to resist the enforcement of an executory contract which she signed only by reason of the plaintiff's duress. It is a well-recognized principle of law that, where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it. *Karow v. Continental Ins. Co.* 57 Wis. 61, and cases there cited. If the two parties were equally innocent, yet if the notes contained in the envelope were destroyed by Mr. Kusworm without the privity of his wife, then it was in consequence of Stone's direction, with Gebhart's consent, that they should be delivered to him, and not that the defendant was the mere instrument of making such delivery. But the parties were not equally innocent. On the contrary, as appears from the evidence, the defendant was the victim of very cruel duress on the part of the plaintiff.

There seems to be a dearth of authorities upon the precise question here presented. In some of the numerous cases cited, and especially those in equity, restoration was made or tendered or made a condition of the judgment, while in others the question is not mentioned. In *Jordan v. Elliott*, 12 Wkly. Notes Cas. 56, the victim of the duress was induced to sign a receipt acknowledging the surrender of her son's note and a policy of insurance on his life held by Jordan as collateral thereto, which he assigned to the defendant. Jordan burned the note in the presence of the defendant, but left the policy and the assignment thereof at her house. Of course, there could be no restoration of the note, and it does not appear that the policy was restored; but the supreme court of Pennsylvania affirmed the judgment in favor of the mother. There are numerous cases where duress or fraud has been made available as a

defense or the ground of recovering back money paid or setting aside contracts executed, without restoration. *Foss v. Hildreth*, 10 Allen, 76; *Manning v. Albee*, 11 Allen, 520; *Kent v. Bornstein*, 12 Allen, 342; *Chandler v. Simmons*, 97 Mass. 508; *Brewster v. Burnett*, 125 Mass. 68; *Morse v. Woodworth*, 155 Mass. 233; *Higham v. Harris*, 108 Ind. 246; *Baldwin v. Hutchison* (Ind. App.), 35 N. E. Rep. 711; *Dimmitt v. Robbins*, 74 Tex. 441; *Brown v. Peck*, 2 Wis. 261. In some of these cases there was a failure to return a release of a claim, or a discharge of a former suit; in some, a failure to return a note and worthless securities; in some, a failure to return counterfeit bills; in some, a failure to restore money paid to a minor and by him wasted; in some, a failure to restore money or property paid or delivered to some person other than the victim of the duress or fraud. The rule seems to be stated fairly well by the late Mr. Justice MITCHELL, of Indiana, in one of the cases cited, as follows: "If the results of a contract or settlement by which a party is sought to be estopped, or which is set up to prevent the assertion of a right, are such as to be *of no benefit to one*, or no detriment to the other, contracting party, that is, if nothing of value was parted with on the one hand *or received on the other*, the contract may be disaffirmed without a formal restoration, on the principle that the law does not require an idle ceremony." *Higham v. Harris*, 108 Ind. 246, 254. Here the defendant received for herself no pecuniary benefit or thing of value. Should it be made to appear upon a trial that the defendant, as executrix of her husband's estate, actually received the notes contained in the package, or otherwise became a party to the destruction or conversion of them, a different question would be presented.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

The City National Bank of Dayton, Ohio, vs. Kusworm,

WINSLOW, J.   The importance of the principle involved in this case prompts me to state briefly the reasons why I cannot concur in the conclusions of the majority of the court.   The evidence in the case is entirely insufficient to show that the note in suit was given to compound a felony. The only defense which the evidence tends to prove is that the note was given by the defendant under duress of threats of imprisonment of her husband.   That an executory contract may be avoided or rescinded which has been made under the influence of such duress as the evidence here tends to prove is quite well established, and I shall spend no time on that question.   The avoidance or rescission in such a case stands on the same ground as avoidance or rescission of a contract induced by fraud.   Duress is, in fact, a species of fraud.   Cooley, Torts (2d ed.), 592; *Reynolds v. Copeland*, 71 Ind. 422; 6 Wait, Act. & Def. p. 663, § 12.   Logically and necessarily, the same conditions will be imposed in a case of duress as in a case of the more common kinds of fraud.   One of these conditions universally insisted upon is that the defrauded party must return or offer to return the consideration, if any has been received, or its equivalent in case return of the specific consideration be impossible.   Citation of authorities on this proposition seems unnecessary, and I content myself with one case in this court, where the rule is well stated, with authorities.   *Van Trott v. Wiese*, 36 Wis. 439–448.   I know of no exception to this rule, at least as applicable to persons of full age and mental competency.   It is true that where a consideration has been received which is worthless or represents nothing of value, its return will not be required, because such return would be a mere idle ceremony. This is not an exception in fact to the rule, but rather a demonstration of the existence of the rule itself, because in such cases failure to return the consideration is always ex-

cused by the courts on the very ground that there is practically nothing to be returned, thus emphasizing the general rule. With deference, I say that most of the cases relied upon in the majority opinion as justifying the decision in this case are cases where the return of the consideration was excused because it was absolutely worthless.

In *Foss v. Hildreth*, 10 Allen, 76, the party who was seeking to avoid a contract induced by fraud and duress did not return a discharge of a groundless action pending against him, and the court says that such return was not necessary, because " the discharge is not property of any value to the defendant, nor is it of any use to the plaintiff.". It appeared in that case, also, that the plaintiff made the voidable contract while intoxicated, and the court remarks that, where a person *non compos* makes a deed and receives a valuable consideration for it, he may avoid it without first returning the consideration. *Manning v. Albee*, 11 Allen, 520, was an action of replevin for a quantity of clothing which Manning had been induced to trade to one French in exchange for French's promissory note, with certain bonds as collateral. The bonds were represented as very valuable, but were in fact worthless. Albee afterwards took possession of the clothing, claiming to have bought it of French, and French disappeared. Manning then ascertained that the bonds were worthless, and brought replevin for the goods against Albee, French not being found. The objection was made that the action could not be maintained without surrender of the note and bonds, but the court holds that to be unnecessary, because it appeared that French could not be found, so that the tender to him was impossible, and the defendant was in no event entitled to them. In *Kent v. Bornstein*, 12 Allen, 342, the return of a counterfeit bill was held unnecessary, because it was entirely worthless. In *Chandler v. Simmons*, 97 Mass. 508, it was

held unnecessary for a minor, in avoiding his deed made during infancy, to return such part of the consideration as he has wasted or spent *during minority*, but the decision is placed upon the express ground that the consideration had been spent during minority, and the principle is recognized that, if he retained the consideration after becoming of age, he would affirm the contract. In *Brewster v. Burnett*, 125 Mass. 68, the return of counterfeit bonds was not required, because they were *entirely worthless*. In *Morse v. Woodworth*, 155 Mass. 233, the plaintiff was not required to return a release given by defendant, because it *was not property* and after rescission it became of no effect. In *Higham·v. Harris*, 108 Ind. 246, it is held that, "if nothing of value was parted with on the one hand or received on the other, the contract may be disaffirmed without a formal restoration, on the principle that the law does not require an idle ceremony." In *Baldwin v. Hutchison*, (Ind. App.) 35 N. E. Rep. 711, the return of an agreement not to prosecute the plaintiff was held unnecessary, because it was "*wholly valueless.*" The case of *Dimmitt v. Robbins*, 74 Tex. 441, was a case where Dimmitt was attacked by armed robbers, who demanded a ransom. Robbins, who was present, pretended to give the robbers $2,500 in an envelope for Dimmitt's release, and afterwards sued Dimmitt for the $2,500 as for money loaned. A judgment in favor of Robbins was reversed, because the evidence did not show that the envelope contained $2,500, and further, because the evidence showed that Robbins was a confederate of the robbers, which fact rendered void any contract such as claimed by Robbins. In *Brown v. Peck*, 2 Wis. 261, Brown was excused from returning the $100 which it was claimed he had received, because in fact he never received it. The court says: "There was in fact no valid, legal payment made, nor any received." The money was left in the hands of one Leland, and never came into the possession of Brown.

The foregoing cases seem to be relied upon in the opinion of the court as justifying in some way the proposition that a contract may be rescinded without return of the consideration.   As a matter of fact, it is apparent that not one of them sustains the proposition that, where anything of value has been received under a contract, rescission can be had without return of such value, except, perhaps, in the case of a minor or a person *non compos mentis*.   The case of *Jordan v. Elliott*, 12 Wkly. Notes Cas. 56, is still more unfortunate as an authority.   It is said in the majority opinion that in that case a policy of insurance, and the assignment thereof, were left at defendant's house, and that it does not appear that the policy was restored.   My reading of this case convinces me that the defendant never received anything.   It is true she signed a receipt acknowledging that she had received her son's note and policy of life insurance and assignment thereof, but the opinion of the court expressly holds that this receipt was obtained by fraudulent representations as to its contents, and that at the same time the defendant refused " to receive either the note or the policy;" and in another place they are referred to as a "*valuless* consideration, which she (defendant) refused to accept."   How this case supports the view of the majority of the court I leave for others to say.

In the present case there is absolutely no question but that *Mrs. Kusworm* received from the bank, in consideration of her note and mortgage, a large amount of negotiable securities.   According to the testimony of the witness Stone (which is uncontradicted), Mr. Gebhart handed to him (Stone), when he received *Mrs. Kusworm's* note, two notes of $4,100 and $800 respectively, signed " M. Kusworm," together with four or five collateral notes signed by other persons and aggregating seven or eight thousand dollars, which were collateral to the M. Kusworm notes. All of these notes Mr. Stone immediately passed over to

*Mrs. Kusworm.* There was no claim or proof that all of the notes were forged or worthless. The utmost claim made by Gebhart was, according to *Mrs. Kusworm's* own testimony, "I have notes here for $4,900, which your husband has forged." Granting this to be true, there were still notes aggregating seven or eight thousand dollars, which were genuine and valuable securities, which passed into *Mrs. Kusworm's* hands as a consideration for the notes which she now seeks to avoid. The effect of the decision of the court is that she may avoid her own contract without accounting for or returning the consideration thereof, and without showing it to be worthless. I think this is contrary to all the law on the subject. It is said that she received no pecuniary benefit from it, because she turned all the notes over to her husband. Still, the bank parted with it, and, according to the rule laid down by Mr. Justice MITCHELL, quoted with approval in the majority opinion, in order to justify rescission without restoration, there must have been "nothing of value *parted with on the one hand or received on the other.*" But there was value received by *Mrs. Kusworm.* The fact that she turned them over to her husband, according to Stone's advice, surely cuts no figure. Stone was not the agent of the bank in any sense. He was simply the friend of *Mrs. Kusworm.* The sum and substance of the matter is that she voluntarily, on the advice of a friend, turned the notes over to her husband, and thus disabled herself from returning them. Was it ever held that a person, by voluntarily destroying a consideration received or placing it in the hands of a third party, could relieve himself from the necessity of returning it or its value in case of rescission? I have yet to see the case which holds such a doctrine. There seems to me no element of estoppel here as against the bank resulting from the fact that Gebhart heard Stone direct *Mrs. Kusworm* to turn over the notes to her husband, and said nothing. The

The City National Bank of Dayton, Ohio, vs. Kusworm.

notes had passed entirely beyond the bank's control. ·Gebhart had received *Mrs. Kusworm's* note and mortgage as full and complete satisfaction for the bank's right and interest in them. She could do as she pleased with them, and the bank could say neither yea nor nay. There was no duty then resting upon Gebhart to speak, and consequently no estoppel from his failure to speak.

The net result seems to be, from the conclusions reached by the court, that the plaintiff loses, without possibility of recovery, the notes of M. Kusworm, and the collaterals which it lawfully held thereto, as well as the note and mortgage of *Mrs. Kusworm.* Against such a result I respectfully protest.

PINNEY, J., concurs in the above opinion by WINSLOW, J.

As to contracts procured by threats of prosecution of a relative, see note to this case in 26 L. R. A. 48.— REP.