R. S. HALL AND OTHERS, *Plaintiffs in Error,* v. ARTHUR
HARDAKER, *Defendant in Error.*

1.  It is contrary to justice that a party should avoid his own
    contract by his own wrong.

2.  The words of a contract will be given reasonable construction,
    where that is possible, and the court will likewise endeavor
    to give a construction most equitable to the parties, and
    which will not give one of them an unfair or unreasonable
    advantage over the other.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the
court.

*Sparkman & Carter,* and *Hocker & Duval,* for Plaintiffs
in Error;

*R. A. Buford* and *H. M. Hampton,* for Defendant in
Error.

PARKHILL, J.—Upon tender in court of the certificates
of stock, the defendant in error recovered judgment for
ten thousand dollars with interest and costs, upon an
agreement in writing, of which the following is a copy.

"Whereas, Arthur Hardaker, of Marion County, Florida,
signéd an agreement with the undersigned, dated March
31st, 1908, whereby the said Hardaker subscribed ten thou-
sand dollars payable to T. C. Taliaferro, as Trustee, under
the terms of the said agreement, to be used with other
money subscribed for the purpose of purchasing the prop-
erty of the Tampa-Havana Lumber Company, and reorgan-

izing the same, or forming a new company to take over its property, and,

Whereas, the said subscription by said Hardaker, and by the other subscribers to said agreement, was with the distinct understanding that the said Hardaker would be made the business or general manager of said reorganized or new company, at a reasonable salary for his services, but no stipulation to that effect is specified in said subscription agreement, and,

Whereas, the undersigned are willing to act in good faith and protect said Hardaker in having the conditions performed which were a part of the consideration for his subscription as aforesaid, in order that there may be no misunderstanding about the matter, this agreement Witnesseth:

That in consideration of said subscription by the said Hardaker and of the payment thereof in accordance with the terms of said agreement, and of the services to be rendered by said Hardaker, as business or general manager of said company, we the undersigned do hereby jointly and severally promise and agree to and with the said Hardaker, as follows, to-wit:

First: That when the property of the Tampa-Havana Lumber Company has been purchased, the said company reorganized, or a new company formed, to take over said property, the said Hardaker shall be given the position of business or general manager of said company at an annual salary of not less than six thousand ($6000.00) dollars, payable in installments, in the ordinary course of the company's business as may be hereafter determined, for a period of not less than three years.

Second: That said Hardaker is to render competent and efficient services as such business or general manager performing the duties ordinarily incident to that of business

or general manager of a business corporation of like character.

Third: If for any reason the said Hardaker should not be given the position of business or general manager of said company, or if he should not be permitted to act in that capacity, and enjoy the salary as aforesaid, and for the period of time as aforesaid, then the undersigned jointly and severally obligate and bind themselves to purchase the stock, share or interest of said Hardaker in said company, if he should elect to sell the same, at a minimum sum sufficient to reimburse the said Hardaker for the amount of money which may be put in by him for such share, stock or interest in said company with interest thereon at the rate of eight per cent. per annum.

In Witness Whereof, The undersigned have hereunto set their hands and seals this the 16th day of April, A. D. 1908.

| R. S. Hall, | S. M. Davis, |
|---|---|
| Thomas Dowling, | Thos. C. Hall, |
| Chas. H. Brown, | John K. Cheyney, |
| | Hayes Bigelow." |

The declaration was demurred to because it fails to allege that the plaintiff rendered to the Tampa-Havana Lumber Company competent and efficient services as business or general manager; that plaintiff performed duties ordinary incident to the position of general manager or was willing to perform same. The demurrer was overruled and the defendant filed the following pleas:

"Now come the defendants in the above entitled cause and for first plea to the declaration say, that they fully performed and kept all the covenants and agreements on their part to be performed and kept in the said contract sued on.

And for a second plea these defendants say that in ac-

cordance with the covenants in said written agreement sued on, they did obtain for the said plaintiff, the position of general manager of the Tampa-Havana Lumber Company and caused the said plaintiff to be employed by the said Tampa-Havana Lumber Company, for said period of three years, at the salary of Six Thousand Dollars per year, payable in installments of $500.00 dollars per month. And these defendants further say that it was covenanted by the said plaintiff in said agreement that if he received the position of general manager as aforesaid, that the said plaintiff would render competent and efficient services as such general manager, performing the duties ordinarily incident to that of general manager of a business corporation of like character. And these defendants further say that after the said plaintiff received said position of general manager and entered upon the performance of his duties, he the said plaintiff, failed and refused to perform competent and efficient services as general manager to said corporation, and thereby the said plaintiff breached the said contract and released the defendants from any and all liability under said contract.

And for a third plea these defendants say that as a condition to any liability on the part of these defendants to purchase the stock of the said plaintiff, the said plaintiff agreed in and by said certain agreement sued on that when he was given the position of general manager of the Tampa-Havana Lumber Company, that he would render competent and efficient services as such general manager. And these defendants further say that the said plaintiff wholly failed to render such competent and efficient services and that he was discharged by the Tampa-Havana Lumber Company for failure to render said competent and efficient services."

A demurrer to each of these pleas was sustained, and the defendants not caring to plead further, judgment was

rendered against them on the pleadings, and they sued out a writ of error to this court.

It will be observed that the contract sued on was not made and entered into by and between Hardaker, the plaintiff, and the Tampa-Havana Lumber Company, but the contract was one by and between Hardaker and the defendants, Hall *et al.*, as individuals.

The pleas set up and the contract shows that Hall *et al.*, were to procure for Hardaker the position of general manager of the Tampa-Havana Lumber Company at a stated salary and for a certain period of time.

Of course, so far as the plaintiff and the company were concerned, the law would imply that Hardaker should render competent and efficient services as general manager of such company, or a provision of this kind in a contract between Hardaker and the company would relate to the liability *of the company* to Hardaker for the payment of the salary for the full period of three years. This contract with the individual defendants did not undertake to bind themselves to the payment of Hardaker's salary for the full period of time if he should not be permitted to continue to act in that capacity. But these defendants as individuals did undertake the performance of another matter as individuals, namely the purchase back of Hardaker's stock, and in that connection and as a consideration for that undertaking it was agreed that said Hardaker should render competent and efficient service as such general manager. This was a very wise and important provision or condition or stipulation. The value of this very stock would depend in large measure upon the way Hardaker conducted himself as general manager of the company. If he rendered good and efficient service as general manager the plaintiffs would take the chances of his stock being worth what Hardaker paid for it and eight per cent per annum interest thereon. If Hardaker did not render

competent and efficient services in the important and powerful position of manager for the company, if he neglected the interests of the company, the stock might decline in value and the defendants might not care to undertake to return him the amount he put in with the interest as stated. So they provided as an important part of this contract that Hardaker should render competent and efficient services as such manager in consideration for, and as a condition precedent to their liability to pay Hardaker "for the amount of money which may be put in by him."

This requirement for the rendering of competent and efficient service by Hardaker could have no reference to his duty to the *company* or the company's liability to him for his salary as we have seen. Its only purpose could be in reference to, and as a protection to the defendant's in the liability of the defendants to purchase back Hardaker's stock at a fixed sum with interest. The defendants *severally* obligated themselves to purchase Hardaker's stock. They were not bound severally for the payment of his salary for the time and amount stated. The company would be bound for the payment of his salary.

So the contract provided that Hardaker should render competent and efficient service and then:

"Third. If for any reason the said Hardaker should not be given the position of business or general manager of said company, or if he should not be permitted to act in that capacity, and enjoy the salary as aforesaid, and for the period of time as aforesaid, then the undersigned jointly and severally obligate and bind themselves to purchase the stock, share or interest of said Hardaker in said company, if he should elect to sell the same, at a minimum sum sufficient to reimburse the said Hardaker for the amount of money which may be put in by him for such share, stock or interest in said company with interest thereon at the rate of eight per cent. per annum."

This provision for Hardaker's rendering competent and efficient service became as we have seen a part of this contract. The pleas allege that the defendants complied with their undertaking to secure the position for Hardaker and aver that he breached the contract by not rendering competent and efficient service. The plaintiff lost his position as the pleas allege by his own wrong doing by refusing to render efficient service, by a violation of his own contract. Can it be said that he may recover in spite of his own wrong?

As stated in Broom's Legal Maxims, p. 228, "It is contrary to justice that a party should avoid his own contract by his own wrong." *Nullus commodum capere potest de injuria propria.* The same author says: "It is a maxim of law, recognized and established that no man shall take advantage of his own wrong, and this maxim, which is based on an elementary principle, is fully recognized in courts of law and equity, and, indeed, admits of illustration from every branch of legal procedure." The same author says: "It is moreover a sound principle that he who prevents a thing from being done shall not avail himself of the non-performance he has occasioned." One cannot break and sue upon a contract. Cutter v. Powell, 6 Term Rep. 320; Royce v. Guggenheim, 106 Mass. 201, 8 Am. Rep. 322.

A man is not permitted to charge the consequences of his own fault to others, and complain of that which he himself brought about. Swan v. North British Australasian Company (Limited), 7 Hurl. & N. 603; City Nat. Bank of Dayton v. Kusworm, 88 Wis. 188, 59 N. W. Rep. 564, 43 Am. St. Rep. 880, 26 L. R. A. 48-68.

So, one may not provoke a quarrel and then make full defense. *Qui primum peccat.* Hughes on Procedure, 1062; King v. State, 54 Fla. 47, 44 South. Rep. 941; Barn-

hill v. State, 56 Fla. 16, 48 South. Rep. 251; Kennard v. State, 42 Fla. 581, 28 South. Rep. 858.

So, in the absence of express stipulation, it is contrary to the implied intention of the parties and against public policy to allow a recovery in favor of the personal representative of one who has insured his life for the benefit of his estate and whose death has been caused by suicide, the assured understanding at the time the physical and moral nature of his act of self destruction. 25 Cyc. 876.

It is contended, however, that by the use of the words, "If for any reason" the said Hardaker should not be permitted to act in the capacity mentioned and enjoy the salary for the period stated, the defendants bound themselves to repurchase his stock although the loss of Hardaker's position was caused by his failure to render competent and efficient service. I do not think so.

The words, "if for any reason" are general. According to Lord Bacon, "all words, whether they be in deeds or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person." Broom's Legal Maxims, 646; Webster v. Morris, 66 Wis. 366, 57 Am. Rep. 278, and cases cited. "It is a universal rule of construction founded in the clearest reason," says BLACK, C. J., "that general words in any instrument or statute are strengthened by exceptions and weakened by enumeration." Sharpless v. Mayor, 21 Pa. St. 147.

And so, in a contract for city work, providing that, if the contractor desires an extension of time to complete his contract by reason of any hindrance or delay "from any cause whatever" he shall give notice of the cause of detention to the engineer, to be reported to the council, which is to determine the amount of time that may compensate for the detention, the words "any cause" were construed to refer to any cause other than the act of the city; other-

wise, said the court, the city might cause the contractor such delay that he could not complete the contract within say 30 days after the time specified, and then the city might allow but 5 or 10 days on account of it, which would be an unconscionable result. Hill v. City of Duluth, 57 Minn. 231, 58 N. W. Rep. 992.

As used in a contract for shipment of livestock between the shipper and a common carrier, providing that the carrier should not be liable for loss caused by "escapes from any cause whatever," the contract cannot be construed literally, so as to exempt the carrier from all liability whatever, but only for such escapes in which the negligence of the carrier is not an active and co-operative cause. Oxley v. St. Louis K. C. & N. Ry. Co., 65 Mo. 629.

In Carnig v. Carr, 167 Mass. 544, 46 N. E. Rep. 117, 57 Am. St. Rep. 488, where the contract bound the defendant to furnish the plaintiff with permanent employment at stipulated wages, the court said that the words "permanent employment" would be understood as meaning that, so long as the defendant was engaged in enamelling and had work which the plaintiff could do and desired to do, and so long as the plaintiff was able to do his work satisfactorily, the defendant would employ him, but that in that sense the employment would be permanent; that is, the plaintiff would be under no necessity of looking for work elsewhere, but could rely on the arrangement thus made.

The words of a contract will be given reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. No word in a contract is to be treated as a redundancy, if any meaning reasonable and consistent with other parts can be given to it. The dif-

ferent provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each. In the construction of an agreement the whole is to be considered, not merely disjointed parts. Fry v. Hawley, 4 Fla. 258. An interpretation leading to an absurd conclusion must be abandoned for one more consistent with reason and probability. Jacobs v. Parodi, 50 Fla. 541, 39 South. Rep. 833.

Remembering that the provision of this contract that the plaintiff should render competent and efficient service has no excuse for existence except to protect the individual defendants in their obligation to repurchase plaintiff's stock; that the provision for competent and efficient service by plaintiff was not inserted in this contract for the benefit of the Tampa-Havana Lumber Company the words, "if for any reason" must mean any reason other than the failure of the plaintiff to render competent and efficient service. By this construction we give effect to all parts or provisions of this contract. By this construction, the contract means that Hardaker, rendering competent and efficient service as general manager, the defendants will purchase his stock, if for any reason other than his failing to render such service, he should not be permitted to act as general manager and draw the salary for the whole period of time agreed upon.

The demurrer to the pleas should have been overruled. For this error the judgment is reversed.

Taylor and Hocker, J. J., concur.

Whitfield, C. J., concurring.

The demurrer admits the averment of the second plea that the plaintiff "failed and refused to perform competent and efficient services" as he agreed to do. In *refusing* to

perform service as agreed, the plaintiff must be held to have known that such refusal would cause his discharge from his position as general manager which would make the defendants liable on their contract to purchase the plaintiff's stock; and as the discharge was caused by the plaintiff's own refusal to render the agreed service, he cannot maintain an action against the defendants on their contract to purchase the stock if the plaintiff was not permitted to retain his position. As a good defense to the action may be shown under this plea the demurrer thereto was erroneously overruled. For this reason the judgment should be reversed.

SHACKLEFORD and COCKRELL, J. J., dissent.