Higham *et al.* *v.* Harris *et al.*

Filed Nov. 20, 1886.

---

No. 12,385.

## HIGHAM ET AL. *v.* HARRIS ET AL.

CONTRACT.—*Fraud.*—*Rescission.*—*Status Quo.*—A party who has been fraudulently led into the making of an entire contract, must, upon discovering the fraud, with reasonable promptness avoid the contract as a whole; but where no rights have been actually surrendered and no benefits acquired under it, no formal restoration of the *status quo* is necessary.

SAME.—*Equity.*—*Showing for Rescission.*—Where, in a case of equitable cognizance, a contract which ought not to be enforced is insisted upon, it is sufficient if the party whose rights are affected makes it appear that he has done nothing which makes it impossible for the court to decree a rescission, if the facts warrant it.

SAME.—*Divisible Contract.*—*Rescission as to Part.*—Where a contract is divisible, each part independent of the other and resting upon a consideration peculiar to itself, the injured party may retain the subject of one part, and, having tendered the consideration received, may treat another part as rescinded at law, or he may maintain a suit in equity to rescind one part while adhering to another.

SAME.—*Incomplete Written Contract.*—*When Regarded as Oral.*—*Evidence.*—Where parol evidence is necessary to make a contract complete by supplying an essential part, the contract will be regarded as in parol, except to the extent that it is controlled by the statute.

SAME.—*Consideration.*—*Burden of Proof.*—One who relies upon an oral con-

tract, or upon an agreement in writing which does not show upon its face that it was made upon an adequate consideration, must aver and prove that it is supported by a sufficient consideration.

ACCOUNT.—*Acknowledgment of Incorrect Amount.—Showing of Truth.—Consideration.—Notice.—Estoppel.*—A written acknowledgment, made without consideration, as to the amount of an account, does not preclude the party making it from showing, as against persons who have notice of its incorrectness before acting upon it, that the account as stated is not correct.

MORTGAGE.—*By Joint Purchasers of Real Estate.—Sale of Interest by One Purchaser.—Assumption of Debt by Grantee.—Principal and Surety.—Partition.*—Where two persons unite in the purchase of real estate, and execute their joint notes and mortgage for the unpaid purchase-money, and, after partition between themselves, one sells the part taken by him to a third person, who assumes the payment of his portion of the mortgage debt, such third person—the other purchaser having paid his equitable share of the debt—is primarily liable as principal debtor, and the land received by him must be first looked to before that held by the other, the latter standing as surety.

From the Switzerland Circuit Court.

*W. S. Friedley* and *C. A. Korbly*, for appellants.

*C. E. Walker*, for appellees.

MITCHELL, J.—In 1863 John Higham and William G. Krutz executed a mortgage to the executor of the estate of Nicholas Longworth, deceased, on a tract of land in Switzerland county, containing about 900 acres. The mortgage was to secure a debt—part of the purchase-price of the land—of $30,000, evidenced by six promissory notes of $5,000 each.

This was a proceeding by the executor to foreclose the mortgage.

Hosier J. Harris and Stephen H. Scranton were made parties defendants, they having acquired Krutz's interest in the lands mortgaged.

As between the Longworth estate and the defendants, it was found without serious controversy, that there remained due of the mortgage debt the sum of $7,446.68.

A personal judgment for the amount found due was ren-

dered against Higham and Krutz.    This was followed by a
decree of foreclosure against all the defendants.

The matters in contest arose between Higham on the one
side, and Krutz, Harris and Scranton on the other.

These parties, by way of cross complaints against each other,
and answers and replies thereto, set forth their respective
claims at such length as to forbid any attempt to present even
a synopsis of the pleadings.

It was conceded that Higham and Krutz purchased the
land described in the mortgage from the executor of the
Longworth estate, and received a warranty deed therefor as
tenants in common.    It was also conceded that Higham and
Krutz afterwards made partition between themselves, each
conveying to the other, as tenants in severalty, the shares
agreed upon, and that Harris and Scranton subsequently pur-
chased the part set off to Krutz, taking a conveyance there-
for in which they assumed to pay his share of the unpaid
mortgage debt.

Higham filed a cross complaint, in which he set up that
he had paid his full share of the purchase-money, and that
so far as it remained unpaid it was equitably the debt of
Krutz.    He prayed that the amount remaining unpaid should
be adjudged a prior lien on the land set off to Krutz, and by
him conveyed to Harris and Scranton. In their answers, and
by way of cross complaint, Harris and Scranton set up a
written agreement between Higham and Krutz, by the terms
of which they claimed that Higham had agreed—or that the
result of the agreement and settlement was—that so much of
the mortgage debt as remained unpaid should fall upon him.

To this the latter responded by way of reply and answer,
that Krutz had obtained the pretended settlement by fraud,
undue influence, and without consideration, while he (Hig-
ham) was in a state of intoxication.

Issues were thus joined, which were tried by the court, who,
upon request, made a special finding of the facts, and stated
conclusions of law thereon adverse to Higham and wife.

The facts found by the court, so far as they are material to develop the questions for consideration, may be stated in an abbreviated form as follows:

On the 12th day of October, 1863, Higham and Krutz purchased a tract of land called the " Mexico bottom " of the Longworth estate for $40,000. Of this sum they paid, each paying the one-half, between the date of the purchase and March 1st, 1864, $10,000, at which time they received a deed, and executed their joint notes, secured by mortgage on the land purchased, for the deferred payments. The notes were for $5,000 each, payable in from one to six years inclusive. Subsequently the land was partitioned by agreement, Krutz taking 349½ acres, Higham 200 acres more, the latter paying to the former $6,000 cash as the difference in the division of the land.

In 1870 Krutz conveyed the portion set off to him to Harris and Scranton for $31,000, they agreeing, out of this sum, to pay his share of the unpaid purchase-money to the Longworth estate, and to render the balance to Krutz.

At the time Higham and Krutz purchased the land, they made an arrangement by which Krutz went into possession. As part of the arrangement the latter agreed to cut and sell timber, and make improvements on the land, and out of the anticipated profits pay the purchase-price. In 1870 Krutz claimed that instead of profits a loss of $7,000 had resulted from the timber enterprise. He sent Higham a statement, which was afterwards designated as the "Mexico bottom bill," and demanded to be reimbursed for one-half of the alleged loss. Higham disputed the claim, and refused to pay.

Shortly after the conveyance from Krutz to Harris and Scranton, the latter undertook to ascertain how much of the unpaid purchase-money due the Longworth estate was chargeable to them under the assumption contained in their deed from Krutz. Higham and Krutz were unable to agree. Thereupon, on the 12th day of June, 1871, Krutz commenced a suit against Higham, claiming that the latter owed him one-

half of the loss arising out of the timber adventure, besides $6,000 on the agreement for partition, and $3,000 which he claimed to have paid more than his share of the cash payment of the purchase-money on the land. In previous statements of account rendered by Krutz to Higham, no mention had been made of any claim for the two items last named, the matter in controversy being the account growing out of the timber transaction, or the "Mexico bottom bill."

On the 2d day of August, 1871, Higham, who was addicted to drink, met Krutz, upon the invitation of the latter, and being solicited by him took several drinks of whiskey, after which a settlement of the "Mexico bottom bill" was proposed. They were unable to agree. Continuing to drink, Higham proposed that if Krutz would dismiss his suit, he, Higham, would surrender certain notes, amounting to $2,200 or $2,300, which he held against Krutz. Higham had on deposit in a Cincinnati bank $1,384.48 in money, which he also let Krutz have, taking the latter's note for its repayment, due in one year, without interest. Krutz thereupon accepted the surrender of his notes as proposed by Higham, and agreed to dismiss the suit. At the time this occurred Krutz had in his possession what purported to be a statement of the account of payments made by Higham and Krutz, respectively, to the Longworth estate. This account or statement was in the handwriting of the book-keeper of the Longworth estate, but it was not taken from the estate's books. It was made by the book-keeper at the dictation of Krutz, and was not a true statement, as Krutz knew.

At the time the lawsuit was settled, Krutz told Higham that he wanted an order from him to Harris and Scranton, so that he might get the money due him from them on the sale of his share of the land. He then produced the account made by the book-keeper, which had never been seen before by Higham, and, turning it over, wrote in part himself, and procured Higham to write the balance, as he dictated, the following:

Higham *et al. v.* Harris *et al.*

"MR. J. R. HARRIS—*Sir*—You will please pay Wm. G. Krutz the within bill, which is due him as made out by Longworth heirs, the within bill, which leaves Krutz $14,-682. You can deduct from the thirty-one thousand dollars; pay Krutz the balance, which leaves $16,318, which you will owe Krutz and interest from the 1st of March, 1870. Wm. G. Krutz has agreed with John Higham, and Higham agrees Longworth's account is correct, making Wm. G. Krutz's account $14,682, Higham's account $13,064.44, March, 1st, 1870. (Signed) JOHN HIGHAM."

Higham, at the same time, by the procurement of Krutz and his son, signed the following written statement:

"This instrument of writing, made and entered into this 2d day of August, 1871, by Wm. G. Krutz and John Higham, is to certify that Wm. G. Krutz has this day executed to said John Higham, his promissory note, bearing even date herewith, for $1,384.48—thirteen hundred and eighty-four dollars and forty-eight cents—due one year after date, and that they have made a full settlement of all their affairs and difficulties up to date, and said Krutz hereby agrees to said John Higham that he (Wm. G. Krutz) will withdraw his suit instituted against said John Higham and pay all costs that have accrued on the same, made by said Wm. G. Krutz, and the said John Higham hereby agrees that the account or statement rendered by the agent of Nicholas Longworth heirs as Cincinnati, showing the sum of $14,682 as due from Wm. G. Krutz to the Longworth heirs, is correct and right, showing the matter in full up to the time said bill or statement was rendered, and the said John Higham hereby authorizes Jacob R. Harris to pay to said Wm. G. Krutz all his money due on this land purchased by him, deducting therefrom only $14,682, as is shown by said Longworth statement, a copy of which is attached to this agreement. This is a full settlement of all claims and accounts between the said parties to date, including the Mexico Bottom Bill,

all other accounts or claims of any description whatever for securities, notes or any other claims to date.

(Signed)          "WM. G. KRUTZ.
(Signed)          "JOHN HIGHAM."

This statement was written partly by Krutz, and in part by his son and book-keeper. A copy of the pretended Longworth account was attached to the agreement.

At the time Higham signed the paper showing the settlement he was drunk, having indulged his habit to excess at the request of Krutz. He knew that he had surrendered the notes above mentioned to Krutz, in settlement of the lawsuit, and that he had taken the note of the latter for $1,-384.48, for money which he had loaned, or "let Krutz have." He also knew that he signed some papers.

The court found that the statement, purporting to be from the books of the Longworth estate, was in fact Krutz's own statement copied in the handwriting of the book-keeper of the estate, and was known by Krutz to be false. This statement gave Krutz credit for a large sum above the amount he had actually paid, while it gave Higham credit for less than he had paid.

Krutz and his son, who assisted him in framing the agreement and procuring the signature of Higham thereto, were far superior to the latter in intelligence and business capacity, and previous to the suit between them, Higham had great confidence in Krutz.

Upon presentation of the agreement and settlement to the agent of Harris and Scranton by Krutz, finding the papers in the handwriting of two or three different persons, the agent at once sent for Higham, who, upon seeing the writings, immediately gave notice that they had been obtained by fraud, and that he should not consider himself bound by them.

Before anything was paid by Harris and Scranton, on the purchase of the land, they had notice that Higham repudiated the alleged account and statement, which Krutz had

procured him to endorse at the time of the alleged settlement.

The court found that in June, 1870, Krutz paid $400 on the note given by him to Higham for the $1,384.48. That the latter still held the note for the unpaid balance of that sum. He has never tendered the note back, nor offered to have the suit involving the " Mexico bottom bill" reinstated, nor brought any suit to have the settlement or agreement rescinded.

It is also found that before the beginning of the foreclosure suit, Higham had paid and taken up three of the six $5,000 notes, and the interest thereon, the date and amount of each payment being stated, and that there was due, of principal and interest, on the other three notes the sum of $7,446.68.

As a conclusion of law, the court stated that Higham's land was primarily liable, and that he was personally liable before Krutz, because of the settlement and agreement of August 2d, 1871, and because he affirmed the settlement by retaining the note for $1,384.48, above referred to, and receiving thereon $400 in money, and because he made no effort to rescind the alleged settlement.

The appellants excepted to the conclusions of law. That the facts were correctly found is not questioned. The conclusions of law are the chief subjects of contention.

As may be seen, the learned judge who presided at the trial proceeded upon the assumption that, notwithstanding the appellant had paid his full share of the mortgage debt, yet, since it was also found that he had made the agreement above set out, the supposed benefits of which remained in his hands, he was thereby precluded from availing himself of the benefit of the very truth of the matter in controversy.

When applicable, there is no rule of law more firmly settled, or better supported on principle, than that which governed in the decision of the case below.

A party who has been overreached or fraudulently led into the making of an entire contract, must, with reasonable prompt-

itude, upon discovering the fraud, repudiate, as well that part
of the contract which is beneficial to him, as that which is
not.    He can not treat it as good in part and void in part,
but must affirm or avoid it as a whole.    The text-books and
many decided cases affirm this rule.    *Worley* v. *Moore*, 97
Ind. 15 ;    *Himes* v. *Langley*, 85 Ind. 77 ;    *Heaton* v. *Knowl-
ton*, 53 Ind. 357 ;    *Gregory* v. *Schoenell*, 55 Ind. 101 ;    *Sted-
man* v. *Boone*, 49 Ind. 469 ;    *Joest* v. *Williams*, 42 Ind. 565
(13 Am. R. 377).

If the results of a contract or settlement, by which a party
is sought to be estopped, or which is set up to prevent the as-
sertion of a right, are such as to be of no benefit to one, or
no detriment to the other contracting party, that is, if noth-
ing of value was parted with on the one hand, or received on
the other, the contract may be disaffirmed without a formal
restoration, on the principle that the law does not require an
idle ceremony.    Where a contract is void, or if, being merely
voidable, no rights have been actually surrendered, and no
benefits acquired under it, since in either case the contract
has conferred nothing, there is nothing to restore.    *McQueen*
v. *State Bank*, 2 Ind. 413 ;    *Barickman* v. *Kuykendall*, 6
Blackf. 21 ;    *Mattox* v. *Hightshue*, 39 Ind. 95, 104 ;    *McCracken*
v. *City of San Francisco*, 16 Cal. 591 ;    *Thurston* v. *Blanchard*,
22 Pick. 18 ;    *Stevens* v. *Austin*, 1 Met. 557 ;    *Wicks* v. *Smith*,
21 Kan. 412 (30 Am. R. 433).

It is to be observed, too, that the strict rules requiring a
tender of all the benefits received under a contract as a pre-
requisite to the maintenance of a suit to recover property, the
possession of which may have been parted with under a con-
tract, have peculiar application to suits at law which proceed
upon the theory that rescission has already taken place by
the act of the party aggrieved.

Where a suit in equity is brought, the purpose of which is
to secure the rescission of the contract, it is sufficient for the
plaintiff to show in his complaint that he has substantially
preserved the *status quo* on his part, and to offer to restore

that which he has received under the contract. In like manner, where, in a case of equitable cognizance, a contract which for any reason ought not to be enforced, is insisted upon, it will be sufficient if the party whose rights are to be affected by such contract, makes it appear that he has done nothing which has made it impossible for the court to decree a rescission, in case the facts warrant it. In such cases the decree of the court can be so moulded as to protect the rights of all the parties. *Shuee* v. *Shuee,* 100 Ind. 477, and cases cited; *Allerton* v. *Allerton,* 50 N. Y. 670; *Gould* v. *Cayuga Co. Nat'l Bank,* 86 N. Y. 75; *Hammond* v. *Pennock,* 61 N. Y. 145; *Masson* v. *Bovet,* 1 Den. 69.

A distinction is, therefore, to be observed between cases at law, which proceed upon the theory that a rescission has been accomplished by the act of the aggrieved party, and suits in equity, in which the decree of a court is invoked in order to obtain the rescission of a contract, or the cancellation of a settlement, and for the adjustment of the rights of the parties, on such terms as shall be agreeable to equity and good conscience. In the one case, the injured party must have seasonably tendered to the other all benefits received, so as to have practically rescinded before suit brought. In the other, he must not have been guilty of *laches,* and he must have so far maintained the *status quo,* on his part, as that a court of equity can by its decree effectuate a rescission upon equitable terms. In either case, regard is to be had in applying the principles pertaining to rescission, whether the contract involved is entire and indivisible, or whether it is severable into independent constituents, involving different persons, and whether it rests upon a consideration susceptible of distinct apportionment. Whether a contract is entire or severable is ordinarily determined by inquiring whether or not it embraces one or more subject-matters, or whether the obligation it imposes is due at the same time and to the same person, and whether the consideration is entire or distinctly apportioned to each subject-matter and person. *Indianapolis,*

*etc., R. W. Co.* v. *Koons,* 105 Ind. 507 ; *Rainbolt* v. *East,* 56 Ind. 538 (26 Am. R. 40).

"If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." 2 Parsons Cont., p. 517 ; *Rainbolt* v. *East,* 56 Ind. 541.

Where either the subject-matter of the contract, or the consideration, is entire, there can be no partial rescission. These being entire, the rescission must be complete.

Where, however, a contract is divisible, one part having no necessary relation to the other, each resting upon a consideration peculiar to itself, and independent of the other, the injured party may retain the subject of one part, and, having tendered the consideration or benefit received, may treat another part as rescinded at law, or he may maintain a suit in equity to rescind one part upon equitable terms, while adhering to another independent part.

In such a case, each distinct stipulation, relating to a separate subject-matter, will be treated as a separate contract. *Goodspeed* v. *Fuller,* 46 Maine, 141 ; *Rand* v. *Webber,* 64 Maine, 191 ; *Miner* v. *Bradley,* 22 Pick. 457 ; *Morse* v. *Brackett,* 98 Mass. 205 ; *Bartlett* v. *Drake,* 100 Mass. 174 (1 Am. R. 101) ; *Johnson* v. *Johnson,* 3 Bos. & P. 162 ; *Perkins* v. *Hart,* 11 Wheat. 237 ; *Merrill* v. *Agricultural Ins. Co.,* 73 N. Y. 452 (29 Am. R. 184) ; Kerr Fraud, pp. 336, 337 ; Bigelow Fraud, p. 413.

Having thus stated some general principles, we may now examine the contract, which is said to be an obstacle in the way of the appellants obtaining credit for payments actually made.

This was a proceeding to determine the rights of parties in a case of exclusively equitable cognizance.

Without regard to the form of the transaction, equity penetrates to the substance of what was done and intended by

the parties, and, discarding mere form as useless, adjusts the rights of the parties according to the right of the case.

The appellees are insisting upon a contract which, admitting the truth of the facts found, defeats a clear equitable right of the appellant.

This contract is the basis of their cross complaint and answers. It is the foundation upon which they rest their entire contention. The contract relied on assumes to embrace three distinct subjects. In respect to each subject embraced, upon examination, it appears at once ambiguous and incomplete. Without resorting to parol evidence, it is in many respects unintelligible. For all legal purposes, it is of little or no more consequence than an oral contract. The consideration upon which the several stipulations rest does not appear upon the face of the writing, and hence it falls within the rule that where, in order to make a contract complete by supplying an essential part, resort to parol evidence is necessary, the contract is to be regarded as in parol, except to the extent that it is controlled by the statute. Section 4905, R. S. 1881; *Tomlinson* v. *Briles*, 101 Ind. 538, and cases cited.

The settled rule is, that one who relies upon an oral contract, or upon an agreement in writing which does not show upon its face that it was made upon an adequate consideration, must aver and prove that the contract is supported by a sufficient consideration. *Wheeler* v. *Hawkins*, 101 Ind. 486, and cases cited.

With these principles in view, it will be seen that the facts found come far short of making the contract relied on such an obligation as will serve to defeat the equitable rights of the appellants.

The writing first recites that Krutz had on that day executed his note to Higham for $1,384.48. This was but the recital of a fact, and in and of itself is of no significance whatever. Having no apparent relation to anything else contained in the writing, it constitutes no basis for any con-

tractual obligation. The facts as averred in the pleadings, and found by the court, are, that the note was given for money loaned by Higham to Krutz. Neither the writing relied on nor the facts as found establish any connection between the loan of money and any other subject embraced in the settlement.

The loan of money and taking a note for its repayment, was a transaction resting upon a separate and distinct consideration, entirely independent of anything else, so far as appears. There is, therefore, nothing in the writing which comprehends any element of contract so far as the loan is concerned. The money having been loaned and a note taken for its repayment, no useful purpose was subserved by reciting the fact in a separate instrument of writing.

The next subject covered by the agreement, and the only one which has any element of obligation or contract in it, is that contained by the recital, that the parties had made " a full settlement of all their affairs and difficulties up to date," and that Krutz had agreed to withdraw his suit against Higham and pay all costs. The consideration for this agreement does not appear on the face of the writing, but the special findings show that the surrender of certain notes held by Higham against Krutz was the consideration upon which the latter agreed to dismiss his suit.

The notes having been surrendered, the only legitimate purpose to be subserved by a written agreement was to evidence the obligation of Krutz to dismiss the suit and pay the costs.

The writing also recites that the statement of account, purporting to have been taken from the books of the Longworth estate, is correct.

This recital purports to be nothing more than the admission of an existing fact. It imposes no obligation upon any one. ·Upon its face as well as on the facts found, it is obviously without consideration. Until it was acted on to the.

detriment of some one who was ignorant of the facts, it was. not binding. *Krutz* v. *Craig,* 53 Ind. 561.

No one can be precluded from showing the actual state of an account, because he may have gratuitously stated the amount of it different from what it in truth was, unless some element of estoppel intervenes.

Leaving out of view any question as to the manner in which the writing relied on was procured, neither the facts as they are found by the court, nor the written agreement as it appears, show any consideration for the acknowledgment that the pretended Longworth account was correct.

It thus appears that each subject-matter covered by the writing which is put forward to estop the appellee is entirely independent of the others, and that each, so far as it is sup- ported by any consideration at all, is upon a consideration distinct from the other.    There is, therefore, nothing in the facts found which, precludes a court of equity from accom- plishing exact justice between the parties.

That Higham received and retains $400 of the money which he loaned to Krutz, and that he continues to hold the note for the balance, is in no way inconsistent with his right to have credit for the amount he has actually paid on the debt to the Longworth estate, nor does it afford any reason why he should be estopped from availing himself of the pay- ments made to the Longworth estate, that the suit com- menced against him by Krutz has been dismissed in pursuance of the written agreement.    He paid the full consideration agreed upon for the dismissal, and the consideration paid has been received and retained by Krutz.

Upon the facts as they appear, we do not find it necessary to prolong this opinion by inquiring into the effect of the alleged fraudulent conduct of Krutz, in inducing the intox- ication of Higham, and procuring the contract relied on to be signed by him while in that condition.

We have carefully considered the questions made upon the pleading in the case.    Within the principles already stated,

there was no reversible error in the rulings upon the pleadings. In the view we take of the matters in controversy, complete justice may be done by an application of the law to the facts as found by the court.

We recognize the rule insisted upon by the learned counsel for the appellee, that a party must fail or succeed upon the issues as they are made. This rule presents no obstacle to the conclusion at which we have arrived.

By his cross complaint the appellant Higham tendered as an issue that he had paid his full share of the debt to the Longworth estate, and asked as relief, that it be adjudged that to the extent that the debt remained unpaid it be decreed a prior lien on that part of the land set off to Krutz.

Harris and Scranton predicated their right, both in their answers to the cross complaint of Higham and in their cross complaint against him, upon the writing or settlement which they put forward. As we have before determined, this writing was incomplete and ambiguous, and did not upon its face import a consideration. It was therefore necessary that the parties putting it forward should aver and prove that it was made upon an adequate consideration. The burden was upon them to that extent. From the facts as found by the court, it must be assumed that the evidence failed to show any consideration for the acknowledgment made by Higham that the Longworth account relied on was correct. As the court found it was not correct in fact, that Krutz knew it, and that Harris and Scranton had notice before they acted upon it, the gratuitous acknowledgment can not be permitted to stand in the way of the appellant's equitable rights.

A suggestion is made that because the Longworth estate was not made a party to the appeal, an obstacle is presented against any reversal of the judgment. In this we do not concur. The controversy both in the court below and here is entirely between the parties to this appeal. The Longworth estate recovered a joint judgment on its complaint against Higham and Krutz, and had a straight decree against the

land of all, the decree making no mention of the rights of the defendants between themselves. This was a separate judgment and decree in favor of the plaintiff below on his complaint. With this all parties are content. There was a separate decree against the appellant on the issues made on the several cross complaints filed. From this latter decree this appeal has been prosecuted. The plaintiff below has no concern with, or interest in, this appeal. His decree can not be affected, however the rights of the defendants below may be adjusted among themselves here. He was therefore not a necessary party to the appeal.

Harris and Scranton, having assumed to pay Krutz's share of the mortgage debt, are primarily liable as principal debtors for the sum remaining unpaid, Higham, as the special findings show, having paid his full share. That part of the land set off to Krutz, and now owned by them, is liable before that owned by Higham, who stands in all respects as the surety for Harris, Scranton and Krutz. *Birke* v. *Abbott,* 103 Ind. 1 (53 Am. R. 474).

Upon consideration of the appellant's petition to reconsider the order heretofore made in this cause, reversing the judgment below and ordering a new trial, it appearing by the record that the correctness of the special finding of facts is not disputed, and that the justice of the cause does not require that a new trial be ordered, within the ruling in *Buchanan* v. *Milligan, post,* p. 433, it is now ordered that the appellant's petition to modify the mandate heretofore entered, ordering a new trial, be sustained. The judgment of the court below is therefore reversed, with costs, with directions to the court below to re-state its conclusions of law in accordance with the opinion heretofore given, and to render judgment on the appellant's cross complaint on the facts found in his favor, saving his rights as surety as to the amount found due the Longworth estate.

Filed Sept. 15, 1886; motion to modify mandate sustained Feb. 16, 1887.