[No. 4341.    Decided September 8, 1903.]

ALFRED COOLIDGE, *Respondent,* v. CHARLES SCHERING et al., *Appellants.*

FORECLOSURE OF MORTGAGE — QUESTION OF PARAMOUNT TITLE.

The question of paramount title may be determined in a suit to foreclose a mortgage, if the parties voluntarily submit such question for determination.

VENDOR AND PURCHASER — UNAUTHORIZED CONVEYANCE BY CORPORATE OFFICER — RATIFICATION — TITLE ACQUIRED — LIEN OF PRIOR UNRECORDED MORTGAGE.

A mortgagee of land belonging to a corporation who fails to have his mortgage recorded, has no lien as against a subsequent grantee under a conveyance unauthorized by the corporation, who takes without notice of the prior mortgage, if the circumstances are such as to estop the corporation from denying the authorization.

CORPORATIONS — CONVEYANCE BY OFFICER — AUTHORITY — ESTOPPEL.
Where an officer of a corporation in sole charge of its business falsely represents that he has been authorized to make a sale of certain of its real estate, and fraudulently connives with a fictitious officer to make a conveyance thereof, and the corporation makes no move to disaffirm the conveyance for two years after discovery of the fraud, it is estopped to deny the authority of such officer.

Appeal from Superior Court, Whatcom County.—Hon. JEREMIAH NETERER, Judge. Reversed.

*Jesse A. Frye, Newman & Howard* and *Thomas D. J. Healy,* for appellants.

*T. O. Abbott,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—Prior to January 26, 1898, the Sehome Improvement Company, a corporation, was the owner of section 11, township 37 N., of range 4 E., W. M., in Whatcom county. On that date the said company executed and delivered to Alfred Coolidge a mortgage on said section of land, together with other lands, to secure the payment of two promissory notes amounting to $10,500. This mortgage was not recorded until June 20, 1899. About December 1, 1898, one E. Bartlett Webster, who was at that time secretary and treasurer of the Sehome Improvement Company, and the only person in charge of the general office of the company, and who had full charge and control thereof, and was authorized to transact all the business of the company, entered into negotiations with appellant Charles Schering to sell to him the said section of land, representing that he was authorized to sell this and other lands at $4 per acre. He exhibited to Schering a false entry in the minute books of the company to that effect. Schering refused to purchase

the land for cash, but offered to exchange fifty shares of the capital stock of the Bellingham Bay Gas Company, of the value of $1,500, for the said section of land. Webster thereupon notified Schering that he was not authorized to exchange the land for said stock, but could only sell for cash. Thereafter, on the morning of January 9, 1899, Webster falsely notified Schering that a meeting of the trustees of the Sehome Improvement Company had been held on the previous day, and that he had been authorized to trade the land for the fifty shares of gas stock; that pressing and important business had prevented him from transcribing the minutes of the meeting on the minute books of the company, but that the same would be done, and would show authority in him to make the trade. Schering thereupon examined an abstract of the title to the real estate, and found the title clear in the Sehome Improvement Company. The mortgage to Coolidge, above referred to, was not shown upon the abstract, and was not of record, and Schering had no notice or knowledge thereof. Schering, relying upon the record title of the land and the representations of the secretary as to his authority to sell, purchased the land, and assigned and delivered to Webster the fifty shares of gas stock. Webster thereupon delivered to Schering a warranty deed regular upon its face, signed by the Sehome Improvement Company, by himself as secretary and one F. D. Alexander as vice president. The consideration expressed in the deed was $1. Alexander was not vice president of the company, but this fact was unknown to Schering. This deed was recorded by Schering on the day it was delivered to him, viz., January 10, 1899. Some time in June, 1899, A. F. McClaine, president of the Sehome Improvement Company, was informed that the real estate had been transferred to Schering. On June

20, 1899, Coolidge placed his mortgage of record. On the 8th day of June, 1900, Schering and wife sold the property to Mary Wasmer, since deceased, but pending the litigation and prior to her death Mary Wasmer conveyed the property to her daughter, Emma Schering, the wife of Charles Schering. Said Webster remained in Whatcom, as secretary and treasurer of the Sehome Improvement Company, up to December 1, 1900, when he sold the gas stock, pocketed the proceeds, and left the state. The Sehome Improvement Company received no benefit therefrom. Although the president of the Sehome Improvement Company was advised and knew in June, 1899, that said property had been conveyed by deed regular upon its face to Charles Schering, no notice that the same was unauthorized was given to Schering or his transferees until the commencement of this action on January 10, 1901. Thereafter, on June 10, 1901, a resolution was passed by the trustees of the Sehome Improvement Company repudiating the acts of the secretary in selling the land to Schering. This action was brought by Coolidge on January 10, 1901, to foreclose his mortgage. The Sehome Improvement Company and all other defendants defaulted except Charles Schering, Emma Schering, his wife, and Mary Wasmer, who answered jointly, denying generally the allegations of the complaint, and by way of affirmative defense set up a prior paramount title in Mary Wasmer. Plaintiff thereupon replied, denying title in Mary Wasmer, and this was the only disputed issue in the case.

In *Oates v. Shuey,* 25 Wash. 597 (66 Pac. 58) we held that questions of paramount title cannot be tried in suits for foreclosure of mortgages, but it was there said that a defendant "might have appeared in the action, and voluntarily submitted the question of her paramount title

for determination, and would, in that event, have been bound by the decision thereon." This was done in this case, and the court below, after finding the facts substantially as above stated, entered a judgment upon conclusions of law as follows:

"That the plaintiff is entitled to a decree foreclosing his mortgage upon all the property described in said mortgage, and that such decree should contain the usual provisions and directions of a decree in foreclosure cases: providing, however, that said decree of foreclosure, in so far as it affects section 11, shall be made subject to the taxes paid by said Mary Wasmer, amounting to $868.96, together with legal interest thereon from the date of the several payments of said taxes until paid; and also subject and inferior to a lien of $1,500, the value of said gas stock which was exchanged for said land, together with legal interest thereon from the 10th day of January, A. D. 1899, until paid, and that said two amounts and interest due thereon be declared a prior lien upon the said section 11, and that said lien be declared in favor of Emma Schering, who has succeeded to the rights and interest of the said Mary Wasmer; and that said lands should be sold, and the proceeds derived from the sale of said section 11 should be applied first to the payment of the moneys due for said taxes and interest thereon and to the payment of the said $1,500 and interest thereon, and the balance of the proceeds derived from the sale of said section 11 be applied to the payment of the amount found to be due plaintiff."

The effect of this decree is to set aside the sale and give the purchaser a prior lien on the land for the purchase money and taxes paid. Both parties appeal.

It seems to us there is but one question in this case, and that a question of law, viz., under the undisputed facts, did Schering or his assigns acquire title to the real estate in question? There can be no middle ground. Schering either acquired title to the land, or he acquired

36-32 WASH.

no interest therein as against Coolidge, the mortgagee. There can be no doubt that, if the Sehome Improvement Company, after it had mortgaged the land to Coolidge, had sold it for value to Schering, without notice of the mortgage, actual or constructive, Schering would have taken the land freed from the lien of the mortgage. Bal. Code, § 4535; Jones, Mortgages (5th ed.), § 456, 527. Even if such sale were intended by the seller to be in fraud of the rights of Coolidge, Coolidge could not, in that event, be permitted to reimburse Schering, an innocent purchaser, and thereby assert his mortgage against the land. If Coolidge desired to prevent a sale of the land except the same be made subject to his mortgage, he should have filed his mortgage for record. Not having done so for more than a year after it was delivered to him, he cannot be heard to complain against one who purchases without notice or knowledge of his mortgage. But it is argued that Webster had no authority to sell or convey the land, and therefore no sale was made by the Sehome Improvement Company to Schering. There is nothing in the record to show what business the Sehome Improvement Company was engaged in, but it was shown and found by the trial court

"That on the 10th day of January, 1899, and up to and until the 1st day of December, A. D. 1900, one E. Bartlett Webster was the duly elected, qualified, and acting secretary and treasurer of the defendant the Sehome Improvement Company, and that as such officer he had full and complete charge of the business and office of said Sehome Improvement Company on Bellingham Bay, which said office was the principal place of business of said corporation, and that the said E. Bartlett Webster was the only person on Bellingham Bay who was in or about or connected with the said company's office, or who had anything to do in or about the business affairs or office

of said company at said place, and was, so far as the public knew, in full charge and control of the company's affairs in the said city of Whatcom, and was authorized to transact all the business of said company at said place."

When, in addition to these facts, it was also shown that the secretary had issued a deed regular upon its face, it certainly devolved upon the plaintiff to show want of authority in the agent of the Sehome Improvement Company to make the transfer, and also that persons dealing with him had, or should have had, notice of such want of authority. There is no evidence in the record tending to show that Schering had such notice, or should have had it. On the other hand, the evidence shows that Schering examined the minutes of the company, and found there authority for Webster to sell the property. He was told by Webster that the trustees had given him authority to make this particular transfer. There was no other officer or agent of the company in Whatcom of whom inquiries could be made. The other officers of the company resided elsewhere, and paid little or no attention to the business of the company. As was said in *New York & N. H. R. R. Co. v. Schuyler,* 34 N. Y., at page 69:

"The rule which governs this class of cases, in my judgment, rests upon a sound principle. As was said by SELDEN, J., in *Griswold v. Haven,* 'The mode in which the liability is enforced in all these cases is by estoppel *in pais.* The agent or partner has in each case made a representation as to a fact essential to his power, upon the faith of which the other party has acted, and the principal or firm is precluded from controverting the fact so represented. It goes back to the celebrated aphorism of Lord HOLT in *Hern v. Nichols* (1 Salk. 289): "For, seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver, should be a loser than a stranger," or, as more tersely expressed by ASHURST, J., in *Lick-*

*barren v. Mason* (2 T. R. 70), "Whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." ' " *Merchants' Bank v. State Bank,* 10 Wall. 646.

It is also shown that the president of the company knew about the transfer in June, 1899, and no steps were taken by the trustees of the company to repudiate the transfer until June 10, 1901, long after this action was begun, and then the only action taken was a resolution spread upon the minutes repudiating the sale. Coolidge, the mortgagee, was also a trustee of the company. Under these circumstances we think the language used in *Martin v. Webb,* 110 U. S. 7 (3 Sup. Ct. 428) is particularly applicable:

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, elect the officers of the bank, and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of the business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

If the transfer of the land by a deed valid upon its face was fraudulently made by the agent of the Sehome Improvement Company, such deed was not void, but only voidable as to that company, which could either ratify the sale or repudiate it and set aside the conveyance by a proper action. *Sawtelle v. Weymouth,* 14 Wash. 21 (43 Pac. 1101); *Preston-Parton Mill. Co. v. Dexter Hor-*

*ton & Co.*, 22 Wash. 236 (60 Pac. 412, 79 Am. St. Rep. 928). As we have seen above, it made no effort to disaffirm the transfer until two years after it had acquired the knowledge thereof, and then only by a resolution repudiating it. Under these circumstances, if an action had been brought by the Sehome Improvement Company to set aside the sale on the ground of want of authority in Webster to make it, the company, after the lapse of time the sale was permitted to stand unchallenged after knowledge, and after the purchaser had again sold the property, would have been estopped to say that the secretary was not authorized to make it. If Coolidge, the mortgagee, has any right to litigate the question of authority in Webster to make the sale, he has no greater or other right than the Sehome Improvement Company. He had his mortgage at the time of this sale. He had neglected to record it for nearly a year prior to the sale, and did not record it until five months after the sale and transfer had been made. His lien, therefore, did not attach until after the transfer, and then only to the interest of the mortgagor in the property at the time the mortgage was recorded. If the mortgagor had no interest at that time, Coolidge had none. Clearly, therefore, if the mortgagor is estopped to dispute the authority of Webster to make a conveyance of the land, Coolidge is also estopped. For these reasons the plaintiff cannot be held to say that his mortgage is a prior lien upon the land.

The judgment is therefore reversed in so far as it makes the plaintiff's mortgage a lien on section 11, and the title to said section is declared to be in Emma Schering, free from the plaintiff's mortgage; appellant Emma Schering to recover her costs.

FULLERTON, C. J., and DUNBAR and ANDERS JJ., concur.