[No. 12911. Department One. June 9, 1916.]

EDWARD M. SOBODA *et al., Appellants,* v. NOLF & COMPANY *et al., Respondents.*[1]

APPEAL—RECORD—ABSTRACT OF EVIDENCE—DISMISSAL. Except in an extreme case an appeal will not be dismissed for undue amplification of the abstract, under 3 Rem. & Bal. Code, § 1730-1, providing for an abstract of the evidence in narrative form unless it is "necessary for the discussion of the evidence."

APPEAL—REVIEW—PLEADINGS—AMENDMENT. An appeal will not be dismissed on account of the insufficiency of the complaint to state a cause of action where the evidence is sufficient, since the complaint will be deemed amended to conform to the proof.

TRIAL—FINDINGS—NECESSITY. Findings of fact and conclusions of law are not essential in an equity case tried *de novo* on appeal.

BROKERS—POWERS — SCOPE OF AUTHORITY — WAIVER — RIGHTS OF PRINCIPAL. It is beyond the scope of the authority of a real estate broker, employed to effect an exchange of properties, to enter into an agreement waiving the right to rely upon representations made by the other party as an inducement to the trade, and the principal is not estopped by the agent's signing such an agreement without notice to him.

EXCHANGE OF PROPERTIES—FRAUD — EVIDENCE — SUFFICIENCY. A mortgage for $4,250, included as part consideration for an exchange of properties, and represented by defendant to be bankable and as good as cash, is shown to have been in bad faith, where it appears that the mortgaged property, standing in the name of defendant's wife, was worth from $1,600 to $2,000, with a loan value of $600, was listed by defendant for sale at $3,200 and the notes and mortgage given to defendant the following day, and indorsed without recourse, and was not recorded until four months later, about two weeks before the trade, and an alleged grantee of the land never recorded his deed or paid any interest.

SAME—FRAUD—MISREPRESENTATIONS—RELIANCE UPON. On an exchange of properties, a party living in Iowa, whose agent lived in Oregon, may rely on representations, made to induce the trade, that a real estate mortgage on property in this state, fair on its face, was in good faith, and readily convertible into cash; the same being statements of fact known to be untrue.

[1]Reported in 157 Pac. 1100.

SAME—RESCISSION—PARTIAL—DIVISIBLE CONTRACT. Where consideration for an exchange of properties was divided into distinct items, and included a note and real estate mortgage for $4,250, the consideration is divisible, and partial rescission may be granted where such item was not according to representations inducing the trade.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 27, 1915, dismissing an action for rescission, tried to the court. Reversed.

*Van Dyke & Thomas*, for appellants.

*S. D. Wingate* and *W. B. Bebb*, for respondents.

PER CURIAM.—This is an action for rescission as to one of the items of consideration entering into an exchange of properties. The action is based on the ground that plaintiff had been induced by fraud and deceit to accept in part consideration of the exchange a worthless note and mortgage of the face value of $4,250. From a judgment for defendants, the plaintiffs prosecute an appeal.

The defendants have interposed a motion to dismiss the appeal, based on the ground that the abstract of the record fails to conform to statutory requirements and to the rules of the supreme court. The abstract is undoubtedly rather ample and largely sets out the evidence by question and answer. But the statute itself (Laws 1913, ch. 116, p. 349; 3 Rem. & Bal. Code, § 1730-1 *et seq.*) in providing that the testimony shall be in narrative form without questions and answers, makes an exception in a case where it is "necessary for the discussion of evidence." Attorneys will differ as to the amount of condensation required in an abstract, and we do not feel justified, other than in an extreme case, in penalizing one who errs on the side of mere fullness by dismissing his appeal.

The defendants also move to dismiss the appeal on the ground that the complaint does not state facts sufficient to constitute a cause of action, for the reason that it does not

state a cause of action for partial rescission, or any relief whatsoever. But assuming, without deciding, that to be a fact, we think the evidence fully discloses such a right of action, and the complaint will be deemed amended on appeal to conform to the evidence.

Among the errors assigned by plaintiffs, is the court's failure to make findings of fact and conclusions of law. But this being an equitable action, triable *de novo*, no such findings are essential. *White Crest Canning Co. v. Sims*, 30 Wash. 374, 70 Pac. 1003.

In January, 1913, Edward M. Soboda, of Cedar Rapids, Iowa, who was the owner of eighty-six acres of orchard land situated near Medford, Oregon, wrote J. C. Brown, a real estate broker at that place, directing him to sell or exchange the property, informing him in the letter that no deal would be considered unless $5,000 cash could be realized on the exchange, as he was badly in need of that much money for straightening up his private affairs. Upon receiving the letter, Brown submitted it to John A. Torney, also of Medford, who at once interested Frederick Nolf & Company, of Seattle, Washington, in an effort to consummate a trade. Nolf & Company were informed that $5,000 cash was an essential factor in any deal involving the property. While anxious to make an exchange of some of their holdings for plaintiff's orchard, defendants seem to have had some disinclination to raise, or difficulty in raising, the cash payment required. On the other hand, by a series of artful letters, Nolf began to dangle the note and mortgage in question before the eyes of the Medford brokers, who respectively represented him and plaintiffs. On February 5, 1913, he wrote his agent Torney as follows:

"I have the following belonging to myself personally. The thought has come to me perhaps I could trade it for the bearing orchard and get half of the return this fall. One mortgage, six per cent, $3,000; runs 1, 2, 3 years; one mortgage $4,250, seven per cent runs three years, total $7,250.

Do not confuse these mortgages with any other deals as they belong to my wife personally, and, if I do business with them, it must be gilt edge."

On February 13, 1913, Torney received another letter urging him to do some hard work to put through defendants' offer for the orchard, adding: "Of course I must admit that at this moment I haven't the cash, but can no doubt secure the same. You will have to 'log' pretty hard to have them take the property we offer, but the game is worth the powder." On March 10, 1913, Nolf again wrote Torney, saying: "Please forget about mortgages. Can dispose of them here. These belong to my wife, and she wants securities here. Sorry to bother you about it." On March 12, 1913, another letter was written, in which it was said: "Have received no word from you for several days. . . . Would like to get this Soboda deal out of the way before we begin on the others." On March 18, 1913, Nolf & Company again wrote Torney as follows: "We cannot lose the Soboda deal. . . . Can we make this deal with Soboda, $3,000 down, $2,000 six months? . . . We wish to close up on the Soboda property." On March 19, 20 and 21, other letters were written urging the consummation of the "Soboda deal," the letter of the last date closing with the admonition: "Do not let Soboda withdraw as we must make this deal." Finally, Nolf & Company again wrote Torney on April 2, 1913, as follows:

"We submitted a proposition to you to take the place of the $5,000, namely, the two real estate contracts, cash, and two lots in Woodward, Oklahoma. If the above will not close up the matter, as a last resort try this: One mortgage on Seattle real estate, 72x302½ for $4,250, three years, seven per cent. One real estate contract, about $650 due, payments being now made at the bank. Small balance cash. This mortgage belongs to my wife, but will be included in the trade. Try and work on the above first proposition first."

Torney had assured Brown, the agent of plaintiffs, that he was acquainted with Nolf and his business associate, Rev. Forbes, assistant pastor of the First Presbyterian church in Seattle, stating that they were men of high character and financially responsible, and that he could accept Nolf's representations without any fear of being deceived. Relying thereon, Brown at once recommended the acceptance by his principal of the $4,250 proposition, writing him as follows:

"The parties who wish to buy your property are Frederick Nolf & Co. of Seattle. Nolf's partner is Dr. Forbes, assistant pastor of the First Presbyterian church of Seattle. They are responsible people of good standing, financially and otherwise.

"This is the way I see it, the $4,250 first mortgage drawing seven per cent interest you can use in your business through your local bank, so as to make it worth that much cash to you. This is first class paper, and we had hard work to get Nolf to use it in the deal. The $650 real estate mortgage is nearly as good as cash, since the payments are constantly coming in. This with the $100 makes up a total of $5,000 quick assets, practically that much cash down."

Soboda, on receipt of this letter, wired Brown he would accept the trade as outlined. The Soboda property was valued at $60,000. The items exchanged therefor were the following:

| | | |
|---|---:|---:|
| 320 acres Gilliam County, Ore. | $16,000 | |
| Less mortgage | 1,000 | |
| | | $15,000 |
| University lot to balance mortgage | | 1,000 |
| Two Chelan Orchard Tracts ($1,500 each) | | 3,000 |
| Five acres in Kitsap county | | 1,000 |
| 1st Mortgage (Seattle property) | 4,250 | |
| Real estate contract | 650 | |
| Cash | 100 | |
| | | 5,000 |
| Contract for $5,000 per year | | 35,000 |
| | | $60,000 |

On receiving information that Soboda's agent was satisfied with the proposition for exchange, Nolf went to Medford with a written preliminary contract drawn up, which Brown signed as agent for Soboda, after demurring to the following clause:

"It is expressly understood by both parties hereto that no representations whatever concerning any of the property herein described are made by either party as inducement to the other to enter into this agreement; but that each relies wholly on his own independent inquiry as to facts affecting the property bargained for by them and it respectively."

Nolf now claims that Soboda is estopped by the above clause from claiming that he was misled as to the character of the $4,250 item of consideration represented by the Jablonski notes and mortgage. But Soboda never had any knowledge of the signing of the agreement containing the waiver, and it was clearly not within the scope of the agent's authority to so bind his principal, since he merely represented him as a broker in the exchange of properties. Moreover, on the agent's objection at the time to the incorporation of such a stipulation, Nolf asserted the clause did not apply to the mortgage and notes, but only to the properties for which abstracts were to be furnished; that the preliminary contract was merely a "gentleman's agreement" to protect him until the execution of the final contract. Before signing the preliminary agreement, Brown asked in reference to the $4,250 notes: "Mr. Nolf, are these notes readily convertible into cash?" and Nolf replied, "Sure, they are as good as wheat."

The evidence shows that the land covered by the Jablonski mortgage was worth from $1,600 to $2,000, with a loan value of $600. The assessed valuation for taxation was $620. The whole transaction regarding the $4,250 mortgage is somewhat peculiar. It bears all the earmarks of bad faith. During the whole time the record title to the property has been in the name of Nolf's wife. On October 1, 1912, Nolf listed it for sale at $3,200, about forty per cent more than the evidence shows it to be worth, and on the following day

took notes and mortgage to himself personally from one
Jablonski for a purported loan of $4,250 on the property.
It is true Jablonski claims a deed was given him, but he never
had it recorded, and "dealt it off," as he says, within from
six to nine months. If he did convey it, his grantee never
had the deed recorded. With respect to the mortgage itself,
it was not recorded until four months after its execution, and
not until Nolf began to suggest it for trade on the Soboda
deal. There was also indorsed on the notes by Nolf a state-
ment that possession of the lots was not delivered to the mort-
gagor until January 18, 1913, and that the mortgagor was
released from payment of interest until that date; a time some
three and one-half months subsequent to their execution and
about two weeks prior to the closing of the deal. This was
done wholly at the instigation of Nolf; Jablonski himself
testifying that he never asked for any extension, had no rea-
son to do so, and never paid any interest on the notes. The
notes were indorsed by Nolf "without recourse."

Plaintiffs resided in the state of Iowa and their agent for
the exchange resided in Oregon, each too far away to make
an investigation. They were fully justified, therefore, in rely-
ing upon the representations of defendant as to the value of
the mortgage, which was a matter peculiarly within his knowl-
edge. The instruments, being fair upon their face, would
naturally preclude suspicion that they were not what they
purported to be. Nor were the representations mere matters
of opinion, but they were made as statements of fact and
known by the maker to be untrue. *Best v. Offield*, 59 Wash.
466, 110 Pac. 17, 30 L. R. A. (N. S.) 55; *Gillette v. Ander-
son*, 85 Wash. 81, 147 Pac. 634; *Grant v. Huschke*, 74 Wash.
257, 133 Pac. 447; *Jacoby v. Hollada*, 78 Wash. 88, 138
Pac. 558; *Duffy v. Blake*, 80 Wash. 643, 141 Pac. 1149.

The defendants contend that the contract is not a divisible
one, and hence is not susceptible of partial rescission. But
in this we think defendants err. The consideration for the
transfer of plaintiffs' property was divided into distinct

items of varying character, some of which might fail as consideration and the others stand good. The $4,250 item of notes and mortgage being other than it was represented to be, we think the plaintiffs are entitled to tender it back and recover a judgment against the defendants for the amount thereof as part of a divisible consideration.

In Wharton on Contracts, § 748, it is said:

"When a consideration is divisible, and the price can be apportioned, then, if a distinct divisible portion of the consideration fails, the price paid for such portion can be recovered back."

In *Wooten v. Walters*, 110 N. C. 251, 14 S. E. 734, 736, where the sale was of a stock of merchandise and land, it is said:

"When the things are of different kinds, though a total price is named, but a certain price is affixed to each thing, the contract in such cases may be treated as a separate contract for each article, although they all be included in one instrument of conveyance, or by one contract."

See, also, 2 Parsons, Contracts (9th ed.), p. 673; *Higham v. Harris*, 108 Ind. 246, 8 N. E. 255; *Johnson v. Johnson*, 3 Bos. & Pul. 162; *Miner v. Bradley*, 22 Pick. 457; *Bank of Antigo v. Union Trust Co.*, 149 Ill. 343, 36 N. E. 1029, 23 L. R. A. 611. In the latter case, it is held that the discount as one transaction of three promissory notes is a divisible contract.

This case being one triable *de novo*, we have carefully examined all the evidence and have reached the conclusion that the trial court erred in entering judgment in favor of the defendants. The judgment is reversed, and the cause remanded with instructions to permit a return of the note and mortgage and to enter judgment in favor of plaintiffs and against the defendants for the sum of $4,250, with interest at six per cent per annum from the date of the exchange of the properties.