[No. 14607. *En Banc.* April 1, 1919.]

FRANK S. BAYLEY, *Appellant,* v. ALBERT H. PARIS, *Respondent.*[1]

BROKERS (4) — AUTHORITY — APPARENT SCOPE. A broker for the sale of a tract of platted land, who was furnished with a list of prices and authorized to conduct sales in the customary manner by delivering the contract and collecting payments, acts within the apparent scope of his authority in fixing a price less than the list price, and in delivering a forged contract and deed and collecting the payments.

ESTOPPEL (35-1, 62)—ACTS MAKING INJURY POSSIBLE AS BETWEEN ACTOR AND ANOTHER EQUALLY BLAMELESS—PERSONS ESTOPPED. Under the rule that the one of two innocent persons who had placed it in the power of another to occasion a loss must stand the same, the owner of a large tract of platted land who placed the same in the hands of a broker, clothed with apparent authority to make sales and collect the money, must stand the loss, where the agent sold lands at less than the list price and embezzled the payments.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered May 12, 1917, upon findings in favor of the defendant, in an action to quiet title. Affirmed.

*A. R. Hilen* and *Herr, Bayley & Croson,* for appellant.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for respondent.

[1]Reported in 179 Pac. 795.

MOUNT, J.—The plaintiff brought this action for possession and to quiet title to certain real estate, in Skagit county. The complaint alleged that the plaintiff was the owner of the property. The defendant, for answer to the complaint, denied the ownership of the plaintiff, alleged. ownership in himself, and prayed that the title be quieted in him and that the plaintiff be required to execute and deliver to him a quitclaim deed. Upon issues so framed, the case came on for trial to the court without a jury, and resulted in a decree as prayed for in the cross-complaint. The plaintiff has appealed from this judgment.

The facts are not disputed. They are, in substance, as follows: In May, 1911, the appellant purchased a large tract of land in Skagit county, near Mount Vernon. This tract of land had been platted into smaller tracts for the purpose of sale. One M. Fitzgerald, a real estate agent living at Mount Vernon, had theretofore had the right as agent to sell the different tracts. When the appellant purchased the tract, Mr. Fitzgerald was authorized as agent to continue the sales. He was furnished by the appellant a list of these tracts, with the prices which he was to obtain therefor. A number of contracts were outstanding. It was the agent's duty to collect the deferred payments on these contracts and to remit them to the appellant, who lived at Seattle. The list of the property with Fitzgerald and his manner of conducting the sales was not materially different from that which occurs in the ordinary and customary real estate agency. When he found a purchaser who was able and willing to buy on terms, these terms were submitted to the owner and, if approved by him, he prepared a contract and sent it, in most instances, to Mr. Fitzgerald to be delivered to the prospective purchaser, and Mr. Fitzgerald was authorized to receive the first payment and remit the

same to the owner, who in turn would remit to Mr. Fitzgerald the amount of commission which was coming to him. Prior to the delivery of a contract signed by the owner, Mr. Fitzgerald had no authority to place any one in possession of the property.

In May, 1912, the respondent, desiring to purchase a tract of land consisting of about twenty acres, visited Mr. Fitzgerald's office. Respondent did not know the selling price of the land. He did not know who the owner of the land was and was not informed, but he was then told that the price of the tract which he desired to purchase was $500, and that it would be necessary to submit his application to the owner, who lived in Seattle, and if the contract was approved by the owner, a written contract would be received in the course of two or three days duly signed by the owner. The terms of payment were to be $250 in cash, and $250 in six months after the date of the contract. Two or three days after the first interview, the respondent again visited the office of Mr. Fitzgerald and was informed by him that the contract had been approved by the owner. At this time, Mr. Fitzgerald delivered to the respondent a contract purporting to be signed by the appellant, and duly acknowledged before a notary public. Thereupon the respondent paid to Mr. Fitzgerald $250, being the first payment according to the terms of the contract. When the second payment on the contract became due, respondent again visited Mr. Fitzgerald's office, and was told that it would take two or three days to get a deed executed by the owner and sent from Seattle to Mount Vernon. Two or three days subsequent, a deed was delivered by Mr. Fitzgerald to the respondent, purporting to be signed by the appellant and duly acknowledged. Thereupon the balance of the purchase price was paid.

Both the contract and the deed were forgeries. No part of the money received, either at the time of the delivery of the contract or the delivery of the deed, was ever remitted by Mr. Fitzgerald to the appellant. The price for which the tract of land was listed with Mr. Fitzgerald was $600. The respondent did not know the list price. After the respondent received his contract, he went immediately into possession of the property and made improvements thereon to the value of about $1,000. He also paid the taxes from the year 1913, and has continued in possession of the property ever since. When the respondent received his deed, he placed it of record in Skagit county. The appellant did not discover the forgery until the year 1916, and within a year after making the discovery, this action was brought to set aside the deed and to quiet his title. It is not claimed by either the appellant or the respondent that there was any bad faith on the part of either.

The controlling question in the case is, whether Mr. Fitzgerald was acting within the scope of his apparent authority as agent in selling the property to the respondent; and if so, the question then is, which one of two innocent persons must suffer for the wrong of a third person.

We think there can be no doubt that Mr. Fitzgerald was the recognized agent of the appellant for the purpose of selling the real estate in question, and was not only clothed with apparent authority to sell the property, but was authorized to collect the purchase money and to deliver a contract and deed from the owner to the purchaser. It is not claimed that the respondent knew of the selling price which the appellant had fixed for Mr. Fitzgerald. It is conceded that Mr. Fitzgerald was authorized to hunt up a purchaser and to agree upon the terms of purchase and the price to be paid.

It is claimed by the appellant that the agent was not authorized to sell this particular tract of land for less than $600, but it is not claimed the respondent knew that fact. The respondent, knowing that Mr. Fitzgerald was the agent for the purpose of arranging a sale, went to him and asked him the price. The agent informed the respondent that the price was $500— $250 cash and $250 to be paid in six months after the contract was entered into. Mr. Fitzgerald was authorized to deliver a contract, properly executed by the appellant, to a purchaser.

Upon these facts, there can be no question that Mr. Fitzgerald was the authorized agent of the appellant, acting within the apparent scope of his authority, when he agreed upon the price and terms of sale, delivered a contract and deed, and collected the purchase price. There is some evidence in the record that the prices furnished by the owner were varied from in some instances; but we think that fact is entirely immaterial here, because the respondent did not know of the prices fixed by the owner with the agent. All he knew was that the agent told him the price was $500, which he agreed to pay, and did pay, to the agent. So that the remaining question in the case is, which one of two innocent persons must suffer for the wrong of a third person? Upon this question, it is conceded that the respondent acted in good faith. It is also conceded that the appellant acted in good faith. It is also conceded that the agent collected the money and embezzled it and never sent it to the owner. The owner did not know that any contract of sale had been entered into or a contract forged, or that a deed had been forged by the agent. The rule is well settled that—

"Where one or two or more innocent persons must suffer by the acts of another, he who has placed it in the power of that other person to occasion the loss

must sustain it." *Kucher v. Scott*, 96 Wash. 317, 165 Pac. 82; *Wiswell v. Beck*, 92 Wash. 208, 158 Pac. 976; *Coolidge v. Schering*, 32 Wash. 557, 73 Pac. 682.

There can be no doubt that, if the respondent had paid to Mr. Fitzgerald $600 for the purchase of this particular tract, and Mr. Fitzgerald thereafter embezzled the money without obtaining a deed from his principal, the appellant, under the rule hereinbefore stated, must sustain the loss, because he had placed it within the power of Mr. Fitzgerald to collect the money for the sale of the property. The loss must therefore fall upon him when the purchaser was innocent of any wrong. The fact that the agent fixed the price at $500 would not affect the rule where the purchaser did not know the secret price fixed by the owner with the agent.

The appellant cites and relies upon *Hutchins v. Wertheimer*, 51 Wash. 539, 99 Pac. 577; *Smith v. Craig*, 61 Wash. 528, 112 Pac. 513; and *Soboda v. Nolf & Co.*, 91 Wash. 446, 157 Pac. 1100. The *Hutchins* case was a case for specific performance where the seller had not agreed to the contract; the agent had no general authority to make contracts; the purchaser knew the facts; and we held that the agent had no authority to bind the principal in that case. The *Smith* case was also a case of specific performance where the price was not agreed upon. The *Soboda* case was a case where the purchaser was guilty of bad faith. We think none of those cases are in point, because here the agent had general authority to make the terms of sale, deliver the written contracts and collect the purchase price. The price at which the owner offered the property for sale was not known to the purchaser. The agent plainly had *apparent* authority to make the price, arrange the terms of the contract and accept the money. The purchaser was an innocent party. We are satis-

fied, therefore, that, the appellant, having placed it in the power of the agent to collect the money from the respondent, the loss should fall upon the appellant rather than upon the respondent.

The judgment appealed from is therefore affirmed.

FULLERTON, PARKER, HOLCOMB, MITCHELL, and TOLMAN, JJ., concur.